**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Tanya D. Lewis, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 07-0429 (RMU) |
| | ) | |
| | ) | |
| District of Columbia, | ) | |
| District of Columbia Department of | ) | |
| Consumer and Regulatory Affairs, | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/ OR MOTION FOR SUMMARY JUDGMENT

Plaintiff, Tanya D. Lewis (hereinafter "Lewis"), by and through counsel, John F. Mercer, Esq., respectfully moves this Honorable Court, pursuant to Fed. R. Civ. P. 12(b)(6) to deny Defendants' "Motion to Dismiss and/or Motion for Summary Judgment" (the "Motion to Dismiss") for reasons presented herein in Plaintiff's Opposition and points and authorities contained therein:

1.  That the arguments put forth by Defendants in their Motion to Dismiss are insufficient to justify dismissal of the case. Plaintiff has fairly stated a cause of action sufficient to be adjudicated by the Court;

2.  That insofar as the Defendants pray for Summary Judgment, their prayer for such relief is premature and insubstantial to justify such relief under Fed. R. Civ. P. 56(f), and precedents thereunder.  Accordingly, Plaintiff moves this Honorable Court to require the Defendants to answer the Plaintiff's First

1

Amended Complaint, then schedule discovery and a trial at which Plaintiff's

claims may be fully litigated.

3.      Detailed grounds for Plaintiff's motions are set forth in the attached

memorandum of points and authorities in support thereto.

WHEREFORE, the premises considered, Plaintiff prays that this Court, after

consideration of Plaintiff's Opposition and the Points and Authorities in Support Thereof,

denies "Defendants' Motion to Dismiss and/or Motion for Summary Judgment;" requires

the Defendants to answer Plaintiff's First Amended Complaint; then sets this case for a

scheduling hearing .


Respectfully submitted,


_/s/_____
John F. Mercer
Bar #:184549
Counsel for Plaintiff
Tec Law Group, PLLC.
1000 Connecticut Avenue, N.W.
Suite 600
Washington, D.C. 20036
202.466.3830 Ph.
240.535.8758 Ph.
301.249.4604 Fax
jmjmercer@aol.com

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Tanya D. Lewis, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 07-0429 (RMU) |
| | ) | |
| | ) | |
| District of Columbia, | ) | |
| District of Columbia Department of | ) | |
| Consumer and Regulatory Affairs, | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN GENUINE DISPUTE

In support of Plaintiff's Opposition to Defendants' Motion to Dismiss and/ or For

Summary Judgment, Plaintiff herein submits her Statement of Material Facts in Genuine

Dispute, and states as follows:

1.    Determination of material factual disputes is premature as Defendants have

    not filed an answer to Plaintiff's First Amended Complaint.

2.    Determination of material factual disputes is premature at this point due to

    lack of discovery.

Respectfully submitted,

_/s/_____
John F. Mercer
Bar #:184549
Counsel for Plaintiff
Tec Law Group, PLLC.
1000 Connecticut Avenue, N.W.
Suite 600
Washington, D.C. 20036
202.466.3830 Ph.
240.535.8758 Ph.
301.249.4604 Fax
jmjmercer@aol.com

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Tanya D. Lewis, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 07-0429 (RMU) |
| | ) | |
| | ) | |
| District of Columbia, | ) | |
| District of Columbia Department of | ) | |
| Consumer and Regulatory Affairs, | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S REPLY OPPOSING DEFENDANTS' MOTION TO DISMISS AND/ OR MOTION FOR SUMMARY JUDGMENT

In support of Plaintiff's Response Opposing Defendants' Motion to Dismiss and/ or for Summary Judgment, Plaintiff Tanya Lewis herein submits and relies upon the following authorities:

1. Plaintiff's allegations in her Amended Complaint are sufficient to rebut a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

   a. In *Banks v. District of Columbia*, the court established the applicable standard for rebuttal of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). 377 F. Supp. 2d 85; 2005 U.S. Dist. LEXIS 13519, (D.D.C. 2005):   A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests whether a plaintiff has properly stated a claim upon which relief can be granted. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 73 L.

Ed. 2d 396, 102 S. Ct. 2727 (1982). The explicit language of Fed. R. Civ. P. 8(a)(2) provides that the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . ." *See also Conley v. Gibson*, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *U.S. ex. rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 5 (D.D.C. 2003). The complaint need not plead the elements of a prima facie case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002) (holding that a complainant in an employment discrimination case need not plead the *prima facie* elements); *see also Sparrow v. United Air Lines, Inc.*, 342 U.S. App. D.C. 268, 216 F.3d 1111, 1114 (D.C. Cir. 2000). In deciding a motion to dismiss under Rule 12(b)(6), the court is bound to consider all well-pleaded facts as true, and to draw all reasonable inferences in favor of the nonmovant. *Scheuer*, 416 U.S. at 236; *Bernad*, 275 F. Supp. 2d at 5. Therefore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley*, 355 U.S. at 45-46.

In *Edwards v. City of Goldsboro*, the court ruled that they must not dismiss a complaint unless it appears to certainty that plaintiff would not be entitled to relief under any legal theory that might plausibly be suggested by facts alleged. 178 F.3d 231, 242 (4th Cir. 1999). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests

surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See id.*

Further, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, "we must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*" *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988) (internal quotation marks omitted) (emphasis added).

2. Defendants' motion for summary judgment is premature where Plaintiff has not had a reasonable opportunity for discovery.

   a. While "[a] plaintiff's hope that further evidence may develop prior to trial is an 'insufficient basis upon which to justify the *denial* of [defendant's summary judgment] motion,'" *Martin v. Malhoyt*, 812 F.2d at 1430 (emphasis added), quoting *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir. 1981), a district judge may *defer* a final ruling on that motion, pending further discovery, where the nonmovant avers that "he cannot for reasons stated present by affidavit

facts essential to justify his opposition." Fed.R.Civ.P. 56(f).[1] Indeed, a

reasonable opportunity to complete discovery before grappling with a

summary judgment motion is the norm. *See Celotex*, 106 S. Ct. at 2554-55

("any potential problem with . . . premature [summary judgment] motions

can be adequately dealt with under Rule 56(f), which allows [deferral of] a

summary judgment motion . . . if the nonmoving party has not had an

opportunity to make full discovery"); *see also Committee for Nuclear*

*Responsibility, Inc. v. Seaborg*, 149 U.S. App. D.C. 380, 463 F.2d 783,

787-88 (D.C.Cir. 1971) ("Rule 56[(f)] clearly contemplates that the parties

shall have opportunity for deposition in order to establish the existence of

a material issue"); *Sames v. Gable*, 732 F.2d 49, 51-52 (3d Cir. 1984)

(reversing district court's entry of summary judgment for defendants

where "pertinent discovery requests were outstanding"). *See generally*

10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE

AND PROCEDURE § 2741 at 541-48 (2d ed. 1983) ("One of the most

common reasons offered under Rule 56(f) for being unable to present

specific facts in opposition to a summary judgment motion is insufficient

time or opportunity to engage in discovery.").

3. Defendants' motion for summary judgment should be denied where Plaintiff's

factual allegations are sufficient so that a reasonable jury could find a prima facie

case of failure to promote based on race and gender discrimination, since the

---

[1] We have filed Exhibit Two (Affidavit of the Plaintiff) in opposing Defendant's motion insofar as it purports to be a motion for summary judgment. However, in doing so, we do not concede that this matter is ripe for a motion for summary judgment to be considered by the Court. We refer the Court to our request for discovery pursuant to Fed. R. Civ. P. 56(f).

standard does not state that a member of another racial or gender class of applicants be promoted or selected for each individual position. Instead, the standard requires: the position remained open after his or her rejection and the employer continued to seek applications from other people with similar qualifications to the plaintiff. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). In Plaintiff's case, this happened four times. Ultimately, after five consecutive non-selections, a black male was hired to fill the position.[2] Thus, given the ongoing, continuous pattern of discriminatory facts alleged, any reasonable juror could find that District of Columbia and the Department of Regulatory Affairs breached this standard.

   a.   A plaintiff can establish a prima facie case of race discrimination under Title VII by establishing that (1) he or she belongs to a racial minority; (2) he or she applied and was qualified for a job for which the employer was seeking applicants; (3) he or she was rejected for the position despite his or her qualifications; and (4) the position remained open after his or her rejection and the employer continued to seek applications from other people with similar qualifications to the plaintiff. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). In *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981), the Supreme Court stated that "the

---

[2] See Affidavit of Plaintiff attached hereto as Exhibit Two: Plaintiff, a black female had served as "acting" in the position for several months prior to the position being opened to competition. Plaintiff was the only woman candidate participating in four of the five selection processes. She was clearly the most qualified candidate in each selection. Plaintiff qualified as a journeyman electrician in the two geographical jurisdictions contiguous to the District of Columbia. And, at the time of competition for the position, she was a Master Electrician in the District. Plaintiff had worked as an electrician in construction, private business, as an "in-house electrician. During the period of each selection process, she was advancing herself educationally in college, part time, seeking a degree in business. No male candidate competing in any of selections was remotely competitive with Ms. Lewis in regard to qualifications.

burden of establishing a prima facie case of disparate treatment is not onerous."

b. Each claim alleged in Plaintiff's complaint meets "prima facie evidence" standards. Plaintiff's filing statement offers evidence that is sufficient to raise a presumption of fact or establish the fact in question unless rebutted, is unlawful discrimination. According to *McDonnell Douglas,* the selection of male or even another female for the position is not essential for meeting that standard.

Because each non-selection, as reflected in separate and distinct counts of the complaint, shows intent to discriminate, Plaintiff has sufficiently alleged the "Prima Facie" elements of failure to promote based on race and gender discrimination and retaliation. Despite having several opportunities to select a highly qualified female, the employer chose not to do so. Therefore, the facts show that the decision-makers of DCRA maintained their policy and long standing record of never selecting a female as full-time Electrical Inspections Supervisor. Further, Defendants (including her direct supervisors and the Director of the Agency ) by their refusal to provide an explanation for non-selection, intentional failure to pay her for the period she served as "acting" in the competed for position, tormented and humiliated her creating a hostile work environment which resulted in "constructive discharge" (See "Exhibit Two").

Again, the elements of the prima facie case of failure to promote are: (i) the plaintiff is a member of a protected class; (ii) the plaintiff applied

and was qualified for the job; (iii) the application was rejected; and (iv) the position remained open after the rejection. *Hicks*, 509 U.S. at 505-507. In a wrongful termination case, the second element is whether the plaintiff was performing up to the employer's legitimate expectations. *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1178 (7th Cir. 1997).

Defendants' motion for summary judgment should be denied as a reasonable jury could find in favor of the non-moving party, Plaintiff, on an issue of material fact. When the disputed issue is genuine, summary judgment is precluded.

According to *Banks v. District of Columbia*, the standard sufficient to rebut Summary Judgment is as follows: Under Fed. R. Civ. P. 56, a court must grant summary judgment when the pleadings, affidavits, depositions, answers to interrogatories, and admissions of record demonstrate that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). If the court determines that a jury could find in favor of the non-moving party on an issue of material fact, then the disputed issue is genuine, and therefore precludes summary judgment. *Anderson*, 477 U.S. at 248. However, even where a genuine issue of material fact exists, the movant is entitled to summary judgment

against "a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

As a general rule, when adjudicating a motion for summary judgment, the court must "assume the truth of all statements proffered by the party opposing summary judgment" and construe all evidence in favor of the non-moving party. *Greene v. Dalton*, 334 U.S. App. D.C. 92, 164 F.3d 671, 675 (D.C. Cir. 1999); *see Anderson*, 477 U.S. at 255; *Carter v. Greenspan*, 304 F. Supp. 2d 13, 21 (D.D.C. 2004). The court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000); *see also Wash. Post Co. v. United States Dep't of Health & Human Servs.*, 275 U.S. App. D.C. 101, 865 F.2d 320, 325 (D.C. Cir. 1989).

c.   Defendants, as the moving party, must show: there is no genuine issue as to any material fact *and* that the moving party is entitled to judgment **as a matter of law.**

As a matter of law, Plaintiff has established a prima facie case for each claim alleged in her Amended Complaint.  By definition, "Prima facie" means: at first sight; on first appearance but subject to further evidence or information; or rather, that which is sufficient to establish a fact or raise a presumption unless disproved or rebutted.  A prima facie case is: (1) The

establishment of a legally required rebuttable presumption; (2) a party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor. *Black's Law Dictionary,* 2nd Pocket Ed., Bryan A. Garner (2001).

1.  A plaintiff can establish a prima facie case of failure to promote based on race and gender discrimination under Title VII by establishing that (1) he or she belongs to a racial or sexual minority; (2) he or she applied and was qualified for a job for which the employer was seeking applicants; (3) he or she was rejected for the position despite his or her qualifications; and (4) the position remained open after his or her rejection and the employer continued to seek applications from other people with similar qualifications to the plaintiff. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).  In *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981), the Supreme Court stated that "the burden of establishing a prima facie case of disparate treatment is not onerous." Title VII Discrimination Claims, from §II, *Pyne v. District of Columbia*, 468 F. Supp. 2d 14 (D.D.C., 2006).

Title VII provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2000). The Supreme Court set forth the analysis to be performed under Title VII in

*McDonnell Douglas*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *McDonnell Douglas* established a burden-shifting framework which places the initial burden on the plaintiff to establish, by a preponderance of the evidence, a prima facie case of discrimination. *Teneyck v. Omni Shoreham Hotel*, 361 U.S. App. D.C. 214, 365 F.3d 1139, 1149 (D.C. Cir. 2004).

*McDonnell Douglas* provided that in order to establish a prima facie case the plaintiff must show: (i) that he belongs to a racial minority, (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.  411 U.S. at 802. There is, however, no rigid model for establishing a prima facie case and some requirements can vary depending upon the factual context of each case. *Swierkiewicz v. Sorema*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

The initial burden on the plaintiff to establish a prima facie case of discrimination is not an onerous one. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). *McDonnell Douglas* principally requires little more than that the plaintiff establish that the two most common legitimate reasons that an employer would reject an applicant, an absolute lack of qualifications or the absence of a vacant position, are not present. *Teneyck*, 365 F.3d at 1150. Our

Circuit has made it clear that a plaintiff does not need to show they were disadvantaged in favor of a person outside of the plaintiff's protected class in order to establish a prima facie case. *Id.* (holding that "it is not necessary for an African-American plaintiff to show that she was disadvantaged by the employer's hiring of a Caucasian applicant, or for a female plaintiff to show that a male was hired in her stead,"). While the hiring of a person of the same race or sex as the plaintiff might be relevant in assessing the merits of the plaintiff's case, it is not a factor in the establishment of a prima facie case. *Id.*

Once a prima facie case is made, the plaintiff has created a rebuttable presumption that the employer has discriminated against him. *Id.* at 1151 (citing *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983). Establishment of a prima facie case by the plaintiff triggers the defendant's burden to produce admissible evidence that, if believed, would demonstrate that the defendant's actions were motivated by a legitimate, nondiscriminatory reason. *Id.*

Lastly, should the defendant carry its burden in articulating a legitimate, nondiscriminatory reason for rejecting the plaintiff, the burden returns to the plaintiff and "the sole remaining issue is discrimination *vel non*.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). The plaintiff must be given an opportunity to prove that defendant's proffered

explanation is in fact nothing more than a pretext for discrimination. *Id.* The ultimate question becomes whether intentional discrimination may be inferred from all the evidence before the trier of fact. *Id.* The Court will look at: (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

d.   Discovery is necessary to further prove Plaintiff's allegations of continuous and ongoing malicious tort actions, hostile work environment, and constructive discharge that are pertinent factors for Plaintiff's request for compensatory damages.   Notwithstanding, the facts alleged in Plaintiff's Amended Complaint are sufficient to meet the "prima facie evidence" standard to rebut Defendants' motion to dismiss and to defer Defendants' motion for summary judgment.

1.   Continuous, Ongoing Malicious Tort Actions and Hostile Work Environment.

According to *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998) (citation omitted), (a hostile work environment is permeated with intimidation, ridicule, and insult that alter

work conditions and create abusive work environment);

*Tomasello v. Rubin*, 334 U.S. App. D.C. 375, 167 F.3d 612, 620 (D.C. Cir. 1999) (upholding district court's dismissal of hostile work environment and constructive discharge claims where alleged behavior was "insufficiently severe and pervasive as a matter of law").  "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993) (citations and internal quotation marks omitted). It forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview." *Harris*, 510 U.S. at 21, citing *Meritor*, 477 U.S. at 67.

2.  These were not discrete, independent discriminatory acts perpetuated by D.C.'s Department of Regulatory Affairs, ("DCRA"), but an ongoing, continuous violation of the

laws against discrimination established by Title VII and the

D.C. Human Rights Act (DCHRA).

The facts alleged sufficiently establish a claim

under the continuing violation theory, where the decision-

makers of DCRA engaged in an ongoing, continuous intent

or policy for each individual act of discrimination.  This

theory would also allow a reasonable jury to conclude that

the final act of non-selection was perpetuated in furtherance

of a continuous intent or policy of discrimination.

e.  D.C., by and through D. C. R. A., a municipality is not *non sui juris* as

they are liable for employment discrimination and constitutional torts

arising from action pursuant to official municipal policy, pursuant to Title

VII and DCHRA.  Accordingly, punitive damages are available against

D.C.

f.  As evidenced by receipt of the enclosed right to sue letter, Plaintiff

sufficiently exhausted her administrative remedies with the District of

Columbia Office of Human Rights (hereinafter "Office of Human Rights"

or "OHR") with respect to the District's failure to promote for Selections

#1 through 6; retaliation; and other claims as set forth in the Amended

Complaint.

1.  Appended hereto as Exhibit One, is a copy of the right to

sue letter received from the EEOC.[3]  This Honorable Court

---

See Exhibit One.

should note that the employer failed to attend or reschedule a required mediation session.

2. Plaintiff pleads a prima facie case of retaliation and failure to promote, and has sufficiently exhausted her administrative remedies with respect to retaliation.

    a. In order to trigger the *McDonnell Douglas* burden-shifting scheme that courts have developed under Title VII and which applies equally under the DCHRA and under § 1981, *see Mungin v. Katten Muchin & Zavis*, 325 U.S. App. D.C. 373, 116 F.3d 1549, 1553 (D.C. Cir. 1997), plaintiff must prove by a preponderance of the evidence: 1) that he is a member of a protected class; 2) that he suffered an adverse employment action; and 3) that the action yields an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). In the context of retaliation claims, the *McDonnell Douglas* scheme is triggered upon a showing 1) that the plaintiff engaged in protected activity; 2) that he suffered an adverse employment action; 3) and that these actions are causally connected. *Carter*, 387 F.3d at 878. When the plaintiff complains that one of his

employer's retaliatory acts was a failure to promote him or to consider him for promotion, the plaintiff must also show as part of his prima facie case, 4) that he applied for the position; and 5) that he was qualified for the position. *Id*.

3. Plaintiff's factual statement sufficiently and properly pled a prima facie case of constructive or wrongful discharge.

To prove constructive discharge an employee must show that "the employer deliberately made working conditions intolerable and drove the employee out." *Mungin*, 116 F.3d at 1558 (citing *Clark v. Marsh*, 214 U.S. App. D.C. 350, 665 F.2d 1168, 1173 (D.C. Cir. 1981)).

The court has recognized an employee's cause of action for wrongful discharge as an exception to the general rule that an employment contract of indefinite duration may legally be terminated at any time and for any reason. An "at will" employee may recover damages in tort or contract provided that the discharge has violated some clear mandate of public policy. Such a mandate may come in many forms, including legislative enactments, prior judicial decisions, or administrative regulations. *Moniodis v. Cook*, 64 Md. App. 1 (4th Dist. 1985).

Working conditions rise to the requisite level of intolerableness if they would lead a reasonable person to resign. Thus, proof of constructive discharge does not require evidence that the employer intended to force the employee to quit. *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, (D.D.C. 1993).

"A constructive discharge occurs when the employer deliberately makes working conditions intolerable and drives the employee into an involuntary quit." *Atlantic Richfield Co., supra*, 515 A.2d at 1101. There is, however, "no requirement that the employer intend to force the employee to leave." *Id.* (citations omitted). Working conditions rise to the requisite level of intolerableness if they "would lead a reasonable person to resign." *Id.; accord, e.g., Hopkins v. Price Waterhouse, supra,* 263 U.S. App. D.C. at 335, 825 F.2d at 472; *Clark, supra*, 214 U.S. App. D.C. at 355, 665 F.2d at 1173; *Parrett v. City of Connersville*, 737 F.2d 690, 694 (7th Cir. 1984); *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 888 (3d Cir. 1984); *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983); *Bourque, supra*, 617 F.2d at 65; *Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir. 1977). Thus, proof of constructive discharge does not require evidence

that the employer intended to force the employee to quit. *Hopkins, supra*, 263 U.S. App. D.C. at 335, 825 F.2d at 472. Nor is there any requirement that an employee remain in an "intolerable workplace" for a particular period of time. *Atlantic Richfield Co., supra,* 515 A.2d at 1101 (citing cases).

Whether working conditions are so intolerable that a reasonable person is forced to resign, as Sutherland asserted, is a question for the trier of fact. *E.g., Simpson v. Federal Mine Safety & Health Review Commission*, 268 U.S. App. D.C. 457, 467, 842 F.2d 453, 463 (1988). However, case law demonstrates that "intolerable conditions" sufficient to support a finding of constructive discharge commonly, though not invariably, fall into two broad categories. The first involves working conditions in which the employee is subjected to "a continuous barrage of derogatory comments about . . . appearance, behavior, and morality." *Atlantic Richfield, supra*, 515 A.2d at 1101. The second involves working conditions in which the employee "reasonably expected . . . opportunities for advancement," but the employer's discriminatory actions or omissions "essentially locked [her] into a position from which she could apparently obtain no relief." *Clark, supra*,

214 U.S. App. D.C. at 356, 665 F.2d at 1174; *see Hopkins, supra*, 263 U.S. App. D.C. at 335-336, 825 F.2d at 472-473 (finding a constructive discharge where the denial of a promotion was reasonably viewed as "a career-ending action").

"Intolerableness of working conditions is very much a function of the reasonable expectations of the employee, including expectations of promotion or advancement." *Hopkins, supra*, 263 U.S. App. D.C. at 335, 825 F.2d at 472. Thus, while a discriminatory failure to promote, without more, is insufficient to establish a constructive discharge, *See id.* at 336, 825 F.2d at 473; *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 172 (10th Cir. 1982), it may be the basis for a finding of constructive discharge if the employee can show that she "reasonably expected . . . opportunities for advancement" and that the employer's discriminatory actions or omissions "essentially locked [her] into a position from which she could apparently obtain no relief." *Clark, supra,* 214 U.S. App. D.C. at 356, 665 F.2d at 1174. In *Hopkins,* the court held that the employer's discriminatory failure to promote the plaintiff could be reasonably viewed by a person in her position as "a career-ending action," and that the failure to promote

her, given other indicia of discriminatory animus, therefore "amounted to a constructive discharge." *Hopkins, supra*, 263 U.S. App. D.C. at 336, 825 F.2d at 473.

4. The District of Columbia and District of Columbia Department of Consumer and Regulatory Affairs are not *non sui juris*. Punitive damages are available against the District of Columbia when a statute expressly authorizes it. Here, D.C.R.A., by and through D.C., may be sued for employment discrimination as evidenced in the issuance of EEOC's right to sue letter, Title VII, and DCHRA. Further, right to sue letter is evidence of exhaustion of administrative remedies, especially where agency failed to answer interrogatories and show up for mediation, and complained of acts constitute a continuous, ongoing violation.

   a. Punitive damages are available against District of Columbia.

      i. Punitive damages are not available against District of Columbia. ("D.C.") unless a statute expressly authorizes it. Here, Title VII and D.C. Human Rights Act remedies are available to an employee who presents a prima facie case of discrimination. Punitive damages are not available against the District of Columbia absent an express statutory mandate or, possibly, in "extraordinary circumstances." See *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981); *Butera v. District of Columbia*, 344 U.S. App. D.C. 265, 235 F.3d 637, 658 (D.C. Cir. 2001); *Smith v. District of Columbia*, 336 A.2d 831, 832 (D.C. 1975).

    b.  EEOC's issuance of a right to sue letter, pursuant to Title VII and

DCHRA, is evidence of exhaustion of administrative remedies and

authority to pursue a discrimination claim against D.C.

       In *Shehadeh v. Chesapeake & Potomac Tel. Co.,* 193 U.S. App.

D.C. 326, the court reiterated: in states affording administrative remedies

for conduct forbidden by Title VII, exhaustion of these remedies is a

prerequisite to initiation of a Title VII suit in court. See Title VII, §

706(c), 42 U.S.C. § 2000e-5(c) (1976); *Love v. Pullman Co*., 404 U.S.

522, 92 S. Ct. 616, 30 L. Ed. 2d 679 (1972). See also *EEOC v. Wah Chang

Albany Corp*., 499 F.2d 187, 190 (9th Cir. 1974). But a complainant need

not resort to the state agency in regard to every incident comprising a

continuous series of discriminatory acts, *Weise v. Syracuse Univ*., 522

F.2d 397, 412 (2d Cir. 1975); *Oubichon v. North Am. Rockwell Corp*., 482

F.2d 569, 571 (9th Cir. 1973), and filing with the wrong state agency may

in appropriate circumstances be excused. *Taylor v. Vocational

Rehabilitation Center,* 10 F.E.P. Cas. 936 (W.D.Pa.1975). When a charge

is presented to the Equal Employment Opportunity Commission, oral

notification to the state agency by the Commission on behalf of the

complainant will suffice. See *Love v. Pullman Co., supra*. Thus, the

Commission has undertaken generally to provide such notice when it is

apprised of colorable violations of state law, and that procedure has been

in effect at all times relevant to the litigation before us. See 29 C.F.R. §

1601.12 (1977).  It is only when a substantial nexus exists between a

timely-filed claim and an otherwise time-barred claim that they may be

viewed as constituting a single violation, part of which falls within the

[180-day] limitations period. *Roberts v. Gadsden Mem. Hosp.*, 835 F.2d

793, 799-800 (11th Cir.), modified, 850 F.2d 1549 (11th Cir. 1988).

5.  Accordingly, this Plaintiff moves the Court to: (1) deny Defendants' Motion to

Dismiss and/ or Motion for Summary Judgment; (2) order Defendants to file an

answer to Plaintiff's First Amended Complaint; (3) schedule discovery and a

hearing at which Plaintiff's claims may be litigated and appropriate relief granted.


Respectfully submitted,


__/s/_____
John F. Mercer
Bar #:184549
Counsel for Plaintiff
Tec Law Group, PLLC.
1000 Connecticut Avenue, N.W.
Suite 600
Washington, D.C. 20036
202.466.3830 Ph.
240.535.8758 Ph.
301.249.4604 Fax
jmjmercer@aol.com

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Tanya D. Lewis, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 07-0429 (RMU) |
| | ) | |
| | ) | |
| District of Columbia, District of | ) | |
| Columbia, Department of | ) | |
| Consumer and Regulatory Affairs, | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**<u>ORDER</u>**

Upon consideration of Plaintiff's Response Opposing Defendant's Motion to

Dismiss and/ or for Summary Judgment, it is by the Court this _____ day of _____,

2007,

ORDERED:  that Defendants' Motion to Dismiss and/or for Summary Judgment

is hereby DENIED, and it is,

FURTHER ORDERED: that Defendants file an answer to Plaintiff's First

Amended Complaint,  and it is,

FURTHER ORDERED: that Plaintiff Tanya Lewis's request to timely schedule

discovery be GRANTED and a scheduling hearing be held.

Accordingly, a scheduling conference for this matter will commence on this

_____ day of _____, 2007 at _____ (time).

_____
Judge Ricardo M. Urbina

26

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA | 06-167-DC(CN) |
| | [X] EEOC | 10C-2006-0252( |

| | D.C. Office Of Human Rights | and EEC |
|---|---|---|
| | State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Tanya D. Lewis | (202) 581-0029 | 03-15-19( |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 3422 Highwood Drive, S. E.,, Washington, DC 20020 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area ( |
|---|---|---|
| D.C. DEPT. OF CONSUMER & REGUL. AFF | Unknown | (202) 442-445 |

| Street Address | City, State and ZIP Code | | |
|---|---|---|---|
| 941 North Capitol Street, N.E., Suite 9500, Washington,, DC 20002 | | | |

| Name | No. Employees, Members | Phone No. (Include Area ( |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| [X] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN    [ ] RETALIATION   [ ] AGE   [ ] DISABILITY   [X] OTHER (Specify below.) | 05-24-2004 | 12-23-20( |
| | [ ] CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I believe I have been discriminated against and subjected to disparate treatment in the denial of a promotion and a hostile work environment on the bases of my race (Black), sex (female) and matriculation because:

I was hired by Respondent as an Electrical Inspector on February 11, 2002. I performed my duties well enou so that when the position of Electrical Supervisor became open on May 24, 2004, I was asked by the Chief of Building Inspection Division to act in the position.

On April 20, 2005, the position of Electrical Supervisor became open and I submitted my resume, application and all other requested information for the position, since I was more than qualified for the position. On information and belief, all the other applicants were Black males whose qualifications were not equal to mine. However, the selection was closed without a candidate being chosen, and I remained in the acting position.

On August 1, 2005, the position of Electrical Supervisor was again opened, with the qualifications modified to include elements which had been provided in my resume of April 2005. I applied for the position on August 1 2005. Again, no one was selected, even though I believe I was the most qualified of the other candidates (Black, males). On September 29, 2005, I was removed as the Acting Electrical Supervisor by the Acting Administrator for Building and Land Regulation Administration without any explanation and the position remained open.

In October 2005, the Electrical Supervisor position was advertised as "open until filled" and I applied on Octol 17, 2005. I again made the certification list, since I was highly qualified; more qualified than the other applicants (Black, female, males) who were either not licensed or were not a Master Electrician. On Decemb 23, 2005, Respondent sent me a notice that no one had been selected for the position, and the position was cancelled on November 7, 2005. When I inquired why I had not been selected, Respondent deflected my inquiry. Respondent has also not compensated me for my services as Acting Chief Electrical Inspector from

May 24, 2004 to September 29, 2005.

Currently, I am pursuing a degree in Business Management, and despite my superior qualifications and demonstrated performance, I have been warned that I will not be promoted or advanced. In addition, several employees have said that a female has never occupied a supervisory Electrical Inspector's position and neve will. Consequently, the electrical inspectors (male) have refused to follow my instructions, ostracized me and undermined my authority during this period. As a result, this harassment has created a hostile work environment for me, and the stress has caused me to seek medical attention.

Therefore, I charge Respondent with an unlawful discriminatory practice on the bases of my race, sex and matriculation, in violation of the D.C. Human Rights Act of 1977, as amended, and Title VII of the Civil Rights Act of 1964, as amended. I have not commenced any action, civil, criminal or administrative, based on the above allegations other than the following: CROSS FILED WITH THE EEOC.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | Haydn Demas |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. Expires 12-14-2008 SIGNATURE OF COMPLAINANT |
| 3/16/2006 _Tanya D. Lewis_ Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) Mar 16, 2006 |

## AFFIDAVIT OF TANYA D. LEWIS

1.    That I am an African American female, currently working as a private electrical

contractor under the business name Trulite Electric Electrical Services (see paragr.6,

*infra*) since leaving the District of Columbia Department of Housing on May 21, 2007.

On June 24, 2007, I was awarded an "Associate in Science Degree" from Southeastern

University (D.C.) in Business Management;

2.    That I am a native of the District of Columbia.  I attended and graduated from St.

Patrick's Academy (high school) in Northwest Washington, D.C. in 1981.  After

graduating from high school, I attended the University of the District of Columbia

beginning August 1981 for 1 ½ years.  In November 1983, I entered the electrical trade

with the International Brothers of Electrical Workers ("IBEW") Local #26 (Union)

working through Local #26 until 1994.  As an IBEW apprentice, I worked on various

construction sites in the District, including the Washington Convention Center and

various D.C. Public School buildings;

3.    That in 1990 and 1997, I received my Journeyman Electrician Licenses and

Certification in the Commonwealth of Virginia and the District of Columbia. Thereafter,

I worked for several private companies including Truland Electrical Systems and Mona

Electric.  In 1998, I was successful in achieving Master Electrician Status in the District

of Columbia.  Two years thereafter, I received my Journeyman's certificate in the State of

Maryland. I worked as an "in-house staff electrician" at the National Education

Association ("NEA"); Thereafter (1999-2002), I operated my own electrical business

known as Trulite Electrical Services, LLC.

1

4.      That I commenced employment as an Electrical Inspector for the District of

Columbia Department of Consumer and Regulatory Affairs on February 11, 2002 at

Grade RW 13/6.  Also during that time (2002 to 2003), I was an Electrical Instructor for

the IBEW Local #26 in the District of Columbia and an Electrical Instructor at Prince

Georges Community College in Largo, Maryland.

5.      That on February 11, 2002, I was hired by the District of Columbia Regulatory

Agency of the District of Columbia Department of Consumer and Regulatory Affairs (the

"Agency") as an Electrical Inspector Grade RW 13/6.  In that position, I worked under

the supervision of Mohammed R. Ali, Chief Electrical Engineer and Jatinder Khokhar,

Chief, Building Inspection Division.

6.      That on May 24, 2004, I was appointed to the position of Acting Electrical

Supervisor. During that appointment, I made substantial efforts to institute programs and

strategies to support the mission of the Agency.  However, the Agency declined to

provide me with the support and resources equal to those afforded Supervisors in other

work units and disciplines.

7.      That on May 24, 2004, the position of Electrical Supervisor (the "Position")

became open.  Shortly thereafter, I was selected by Jatinder Khokhar, Chief of Building

Inspection Division to serve as "Acting Electrical Supervisor."  I exercised the duties of

Acting Electrical Supervisor from May 24, 2004 through September 29, 2005.  During

my tenure in that position, I brought my broad background and experience to my work.

For example, I instituted meetings among the Inspectors which helped bring uniformity

in a manner that had not existed before. In addition, I sought to insure adherence to the

2

scheduling system as designed so that the inspection process would be fair and even handed. My dedication and efforts, though resisted, were productive to the organization.

8.    That, when the Agency commenced solicitation for applicants for the Position on April 20, 2005 (Selection #1), I submitted a resume and all other requested information, including an application (Application # 1). Other applications were submitted, all by African American males who were non-District of Columbia residents.  None of the other applicants had qualifications equal to mine.  Selection #1 was closed without a selection. The Position remained open.  I remained Acting Supervisor.

9.    That on August 1, 2005, the Position was again opened for applicants (Selection #2).  I again submitted an application for the position. Notably, the qualifications for the Position were modified to include elements that had not been present for Selection #1. The source of some of those elements was my application for the Position.  I submitted my application for Selection #2 on August 11, 2005.

10.    That on August 12, 2005 the search for applicants for selection #2 was closed. Again, I was fully qualified for the position.  Other applications were filed.  The other applicants were African American males.   None of the other applicants had qualifications equal to mine.   Selection #2 was closed without a selection. The Position remained open.

11.    On September 29, 2005, I was removed as Acting Electrical Supervisor by Lennox Douglas, Acting Administrator for the Building and Land Regulation Administration. There was no explanation for my removal. The Position remained open.

12.    That in October 2005, the Position was advertised as open and applications were solicited for Selection # 3.  On October 17, 2005, I filed an application for the Position.

3

My application established (as it had for Selection #1 and Selection #2) that I was highly qualified for the Position.   Another qualified African American female was recruited by the Agency to apply for the position. All other applicants for the Position were African American males who were either unqualified for the Position or were not as qualified as I was.  On December 23, 2005, I was notified by mail from the Agency that the Position had been "cancelled on November 7, 2005."  Selection #3 closed without selection of an applicant.

13.     That on January 3, 2006, I filed a complaint for discrimination with the Agency alleging that I had been the victim of employment discrimination for being denied promotion to the Position.

14.     That on April 3, 2006 the Position was again advertised as being open and applications were solicited (Selection # 4).  The Agency did not inform me that the Position was again open for applicants.  Though my discrimination complaint was still pending, I submitted an application for the Position.  My application established as it had for Selections #1, #2, #3 that I was highly qualified for the position. The other applicants for the Position were an African American male and two or more white males.  None of the other applicants were as qualified for the Position as I was.  I did not receive notice of action from the Agency as to the disposition of the Position.

15.     That on May 1, 2006 the Position was reopened for candidates (Selection #5).   I applied for the Position. Again, all other candidates for the Position were males.  Again, none of the candidates for the Position was equivalent to me in qualifications.  I did not receive notice of non-selection until May 31, 2006.

4

16.    That on July 7, 2006 I resigned from my position as Electrical Inspector.  I delivered my letter of resignation to the Agency's office of personnel and to my immediate Supervisor David Janifer.

17.    That on July 10, 2006, I commenced work in my new position as Lead Housing Inspector Supervisor for the District of Columbia Housing Authority at a salary of $63,697 per year, DS12/5. I am no longer presently employed in this position, as I am currently in business for myself as Trulite Electric, LLC.

18.    That on July 31, 2006 the Agency notified me by mail that I had not been selected (Selection #5).  Also, in the same mailing was notice for the April 2006 non-selection (Selection #4).

19.    That in July of 2006, an African American male candidate, William Davidson was selected for the Electrical Supervisor Position.  Mr. Davidson worked as an Electrical Inspector under my supervision in 2005.  Mr. Davidson's qualifications for the Position did not equal my qualifications.  In addition, Mr. Davidson was the brother of a supervisor who worked in the same Department of the Agency.

20.    That I was not hired/non-selected for the Position because of gender.  I applied for the Position five times (Selections #1-Selection #5).  Each time I applied I was the most qualified candidate, having served in an electrical managerial position and having occupied the position of Acting Chief Inspector Electrical Branch for 1 year and 4 months from May 24, 2004 to September 29, 2005 during the aforementioned solicitation periods.  I am a current member of the D.C. Board of Industrial Trade (Appointed by the Mayor Anthony Williams). I was the only applicant for the Position claiming a D.C. "residential preference" which is supposed to give weight and enhance my application.  I

was rejected each time I applied for the Position.  Each time I was rejected no satisfactory

reason was provided.

Respectfully submitted,

*Tanya D. Lewis*
Tanya D. Lewis

I, Tanya D. Lewis, depose and say that I have read the foregoing Affidavit of six
(6) pages and swear that it is true to the best of my knowledge, information and belief.

*Tanya D. Lewis*                                6 - 29 - 07
Tanya D. Lewis                                    Date

*C. Burness*                                      6-29-07
Notary Public                                     Date

My Commission expires      M. R. Burness
                           NOTARY PUBLIC, DISTRICT OF COLUMBIA
                           My Commission Expires April 14, 2009

6