## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

Tanya D. Lewis,                )
                                     )
            Plaintiff,        )
                                     )
v.                               )     C.A. No.: 07-0429 (RMU)
                                     )
                                     )
District of Columbia,          )
District of Columbia Department of     )
Consumer and Regulatory Affairs,     )
           Defendants.     )
                                     )
_____)

## PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE REGARDING DEFENDANTS' MOTION TO DISMISS AND/ OR MOTION FOR SUMMARY JUDGMENT

Plaintiff, Tanya D. Lewis (hereinafter "Lewis"), by and through undersigned counsel, herein replies to Defendants' Response to Plaintiff's Opposition To The Motion to dismiss Plaintiff's Amended Complaint and/or Motion for Summary Judgment, and states as follows:

### Preliminary Statement

Defendants hope to terminate this proceeding by summary judgment. However, under no theory of law should they prevail. *All* facts on the record, at this point, have been submitted by the Plaintiff. As a result, rather than "facts in dispute," the facts before the Court exist solely as "undisputed facts" supportive of the allegations propounded in the Plaintiff's complaint and amplified by Plaintiff's submissions (i.e., Plaintiff's Affidavit; Plaintiff's "List of Facts Not In Dispute"[Exhibit One]; and Exhibits). Accordingly, Defendants, as a matter of law, must be denied the relief they seek.

Summary judgment is a drastic remedy, and courts should grant it with caution so that no person will be deprived of his or her day in court to prove a disputed material factual issue. *Greenberg v. Food & Drug Admin.,* 256 U.S.App.D.C. 135 (D.D.C. 1986). For the reasons set forth below, this Court should deny Defendants' Motion to Dismiss and/or Motion for Summary Judgment; order the Defendants to file an answer to Plaintiff's Complaint; and set a date for a scheduling conference wherein the parties may provide for discovery and address the Court with respect to the order of litigation.

I.      **Summary Judgment Presumes That There Has Been Sufficient Discovery.**

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In *Celotex Corp., Inc. v. Catrett*, the court held: In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, **after adequate time for discovery** and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. 477 U.S. 317, 322. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), **except the mere pleadings themselves**; and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred. Here, there has been no discovery and no material factual record sufficient to make or rebut a motion for summary judgment. The court in *Celotex* further stated: The last two sentences of Rule 56(e) were added, as

2

indicated in *Adickes v. S.H. Kress & Co.*, to disapprove a line of cases allowing a party

**opposing summary judgment to resist a properly made motion by reference only to**

**its pleadings.**  Celotex, 477 U.S. at 325.  Therefore, there has to be something other than

the pleadings on which a party moving for and/or opposing a motion for summary

judgment can rely. *Anderson* v. *Liberty Lobby, Inc., ante,* at 328 (WHITE, J.,

concurring).  "Summary judgment motions are usually made before trial and decided on

documentary evidence…" *Bill Johnson's Restaurants, Inc.* v. *NLRB*, 461 U.S. 731, 745,

n. 11 (1983); *Anderson* v. *Liberty Lobby, Inc., ante,* at 214.

II.    **Defendants Have Not Met Their Burden of Production Sufficient To**
       **Proceed With A Motion To Dismiss and/or A Motion For Summary**
       **Judgment.**

The burden of establishing the nonexistence of a "genuine issue" is on the party

moving for summary judgment. 10A C. Wright, A. Miller, & M. Kane, Federal Practice

and Procedure § 2727, p. 121 (2d ed. 1983) (hereinafter Wright) (citing cases); 6 J.

Moore, W. Taggart & J. Wicker, Moore's Federal Practice para. 56.15[3] (2d ed. 1985)

(hereinafter Moore) (citing cases). See also, *ante*, at 323; *ante*, at 328 (WHITE, J.,

concurring). This burden has two distinct components: an initial burden of production,

which shifts to the nonmoving party if satisfied by the moving party; and an ultimate

burden of persuasion, which always remains on the moving party. See 10A Wright §

2727. The court need not decide whether the moving party has satisfied its ultimate

burden of persuasion unless and until the court finds that the moving party has discharged

its initial burden of production. *Adickes* v. *S.H. Kress & Co*., 398 U.S. 144, 157-161

(1970); 1963 Advisory Committee's Notes on Fed. Rule Civ. Proc. 56(e), 28 U. S. C.

App., p. 626.

Such a "burden" of production (based on pleadings alone) is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. See Louis 750-751, (BRENNAN, dissenting), *Celotex* at 330. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.  In this case, there is not, as of yet, a factual record (no admissions, interrogatories, or other exchanges on which the moving party may rely) other than the pleadings, since Plaintiff has not been granted discovery or an opportunity to develop a material factual record.

If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied, and the court need not consider whether the moving party has met its ultimate burden of persuasion. Accordingly, Plaintiff points this Court's attention to the fact that the only substantive evidentiary documents before the Court are Plaintiff's pleadings, submitted with the following exhibits: EEOC's "right to sue letter;" and Plaintiff's Affidavit presented in direct response to Defendant's premature Motion for Summary Judgment and an order from the D.C. Office of Human Rights warning the Defendants for failure to respond to discovery requests.  Rule 56(f) requires, therefore, that a motion or ruling for summary judgment should be deferred until completion of full discovery.

While "[a] plaintiff's hope that further evidence may develop prior to trial is an 'insufficient basis upon which to justify the *denial* of [defendant's summary judgment] motion,'" see *Martin v. Malhoyt*, 265 U.S. App. D.C. 89, 812 F.2d at 1430 (emphasis

added), quoting *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir. 1981), a district judge may *defer* a final ruling on that motion, pending further discovery, where the nonmovant avers that "he cannot for reasons stated present by affidavit facts essential to justify his opposition." FED.R.CIV.P. 56(f).  Plaintiff essentially seeks evidence corroborating the discriminatory acts and the identity of perpetrators of the illegal and discriminatory acts clearly discernible in her well-pleaded complaint and affidavit.  A reasonable opportunity to complete discovery before grappling with a summary judgment motion is the norm. See *Celotex*, 106 S. Ct. at 2554-55  ("any potential problem with . . . premature [summary judgment] motions can be adequately dealt with under Rule 56(f), which allows [deferral of] a summary judgment motion . . . if the nonmoving party has not had an opportunity to make full discovery"); see also *Committee for Nuclear Responsibility, Inc. v. Seaborg*, 149 U.S. App. D.C. 380, 463 F.2d 783, 787-88 (D.C.Cir. 1971) ("Rule 56[(f)] clearly contemplates that the parties shall have opportunity for deposition in order to establish the existence of a material issue"); *Sames v. Gable*, 732 F.2d 49, 51-52 (3d Cir. 1984) (reversing district court's entry of summary judgment for defendants where "pertinent discovery requests were outstanding"). *See generally* 10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2741 at 541-48 (2d ed. 1983) ("One of the most common reasons offered under Rule 56(f) for being unable to present specific facts in opposition to a summary judgment motion is insufficient time or opportunity to engage in discovery.")[1].

---

[1] Furthermore, at this stage of the proceeding, Defendants have opted to file a motion for summary judgment and motion to dismiss rather than an answer; in doing so, they have neither rebutted nor confronted any facts presented by the Plaintiff.

**III.    Plaintiff Has Made A Showing Sufficient To Establish the Existence Of All Essential Elements To Establish Her Case And On Which She Will Bear the Burden At Trial.  Accordingly, Defendant's Motion To Dismiss and/or Motion For Summary Judgment Must Be Denied.**

The nonmoving party is to be given the benefit of the doubt.  On a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in such materials [affidavits, depositions, and exhibits] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962). See also *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 7 L. Ed. 2d 458, 82 S. Ct. 486 (1962). If the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its significance, summary judgment is improper. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 48 L. Ed. 2d 757, 96 S. Ct. 2126 (1976).  See also *Nat'l Ass'n of Gov't Employees v. Campbell*, 192 U.S. App. D.C. 369, 593 F.2d 1023, 1027 (D.C. Cir. 1978) (record must leave no room for controversy and must demonstrate that nonmoving party would not be entitled to prevail under any discernible circumstances); *Traylor v. Black, Sivalls & Bryson, Inc.*, 189 F.2d 213, 216 (D.C. Cir. 1951) (same).

Further, the law does not require response to every single issue.  It requires presentation of a *standard prima facie case* and a claim "upon which relief can be granted." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). The explicit language of Fed. R. Civ. P. 8(a)(2) states that Plaintiff need only provide "a short and plain statement of the claim showing that the pleader is

6

entitled to relief. . ." See also *Conley v. Gibson*, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *U.S. ex. rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 5 (D.D.C. 2003). The complaint need not plead the elements of a prima facie case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002) (holding that a complainant in an employment discrimination case need not plead the *prima facie* elements); see also *Sparrow v. United Air Lines, Inc.*, 342 U.S. App. D.C. 268, 216 F.3d 1111, 1114 (D.C. Cir. 2000). In deciding a motion to dismiss under Rule 12(b)(6), the court is bound to consider all well-pleaded facts as true, and to draw all reasonable inferences in favor of the nonmovant. *Scheuer*, 416 U.S. at 236; *Bernad*, 275 F. Supp. 2d at 5.

   A plaintiff can also, establish a prima facie case by "offering evidence adequate to create an inference that an employment decision was based on a discriminatory criteria illegal under [Title VII]." *Mitchell v. Office of the Los Angeles County Superintendent of Schools*, 805 F.2d 844, 846 (9th Cir. 1986) (quoting *Teamsters v. United States*, 431 U.S. 324, 358 (1977)); see *Lowe v. City of Monrovia*, 775 F.2d 998, 1006 (9th Cir. 1985) (e.g., plaintiff can establish prima facie case of disparate treatment without satisfying *McDonnell Douglas* test if he or she provides evidence suggesting rejection of the candidate for a position of employment was based on discriminatory criteria), amended, 784 F.2d 1407 (1986). A plaintiff who provides such evidence for his or her prima facie case may be able to survive a motion for summary judgment on this evidence alone. *Lowe*, 775 F.2d at 1008.

Accordingly, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley*, 355 U.S. at 45-46.

> **a.  Plaintiff May Sue District of Columbia, Acting By and Through Its Regulatory Agencies, For Punitive Damages Pursuant to Title VII for Gender Discrimination.**

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a)(1). This language is not limited to "economic" or "tangible" discrimination,[2] such as Lewis suffered when DCRA refused to promote her and refused to pay her for services rendered as Acting Electrical Supervisor.  Further, the phrase "terms, conditions, or privileges of employment" evinces a congressional purpose of attacking all recognized forms of disparate treatment in the work place, including the maintaining of a discriminatorily "hostile" or "abusive" environment, such as is alleged by Plaintiff in this case in the closed meetings held by the Agency, which excluded women, and the harassment, humiliation, and isolation for which Plaintiff ultimately received psychological therapy, and concluded in Plaintiff's constructive and wrongful discharge.

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms

---

[2] Here, though not required at this point, Lewis has made substantive allegations of economic and tangible harm.

or conditions of employment to which members of the other sex are not exposed. See 42

U.S.C. § 2000e-2(a)(1) (declaring that it is unlawful to discriminate with respect to, *inter*

*alia*, "terms" or "conditions" of employment).

  **b. Plaintiff Has Properly Pled A Viable, Prima Facie Claim for Failure
To Promote Based On Gender Discrimination for Selections #1-#5,
Since The Complained Of Acts Are, In Essence, One Connected,
Ongoing and Continuous Act United By One Common Illicit Purpose/
Illegal Motive of Discrimination.**

   **i. <u>Plaintiff has sufficiently established a prima facie case of
failure to promote based on gender discrimination.</u>**

A plaintiff can establish a prima facie case of failure to promote based

on race and gender discrimination under Title VII by establishing that (1)

he or she belongs to a racial or sexual minority; (2) he or she applied and

was qualified for a job for which the employer was seeking applicants; (3)

he or she was **rejected** for the position despite his or her qualifications;

and (4) the position **remained open** after his or her rejection and the

employer continued to seek applications from other people with similar

qualifications to the plaintiff. *McDonnell Douglas v. Green*, 411 U.S. 792,

802 (1973). In *Texas Dept. of Community Affairs v. Burdine*, 450 U.S.

248, 253 (1981), the Supreme Court stated that "the burden of establishing

a prima facie case of disparate treatment is not onerous."  Title VII

Discrimination Claims, from §II, *Pyne v. District of Columbia*, 468 F.

Supp. 2d 14 (D.D.C., 2006).

The initial burden on the plaintiff to establish a prima facie case of

discrimination is not an onerous one. *Texas Dept. of Community Affairs v.*

*Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

*McDonnell Douglas* principally requires no more than the establishment by Plaintiff that an employer did not reject an applicant based upon lack of qualifications or the absence of a vacant position. *Teneyck*, 365 F.3d at 1150.  A plaintiff does not need to show he or she was passed over in favor of a person outside of the plaintiff's protected class in order to establish a prima facie case. *Id.* (holding that "it is not necessary for an African-American plaintiff to show that she was disadvantaged by the employer's hiring of a Caucasian applicant, or for a female plaintiff to show that a male was hired in her stead").  While the hiring of a person of the same race or sex as the plaintiff might be relevant in assessing the merits of the plaintiff's case, it is not a factor in the establishment of a prima facie case. *Id.*

Once a prima facie case is made, the plaintiff has created a rebuttable presumption that the employer has discriminated against him. *Id.* at 1151 (citing *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983). Establishment of a prima facie case by the plaintiff triggers the defendant's burden to produce admissible evidence that, if believed, would demonstrate that the defendant's actions were motivated by a legitimate, nondiscriminatory reason.  *Id.*

10

ii.  **Essentially, the five specific acts alleged in Plaintiff's complaint were one, continuous, ongoing discriminatory act since there is sufficient evidence to suggest a common illicit purpose behind the acts alleged.**

Plaintiff has alleged a continuous campaign of discriminatory, retaliatory, and purposeful acts by the Defendants, specifically designed to deny her a position of employment for which she was the most qualified and the most deserving candidate. Though courts have not formulated a clear standard for determining when alleged discriminatory acts are related closely enough to constitute a continuing violation and when they are merely discrete, isolated, and completed acts which must be regarded as individual violations, see *Tarvesian v. Carr Division of TRW, Inc., supra*, 407 F. Supp. at 339-40; *Nelson v. Williams*, 25 F.E.P. 1214, 1215 (D.D.C.1981), it has been established that a plaintiff must do more than show a series of unrelated and isolated instances of discrimination to show a continuing violation.  This inquiry, of necessity, turns on the facts and context of each particular case. Relevant to the determination are the following three factors: The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an

11

employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

Though courts have seldom attempted to delve into its origins or theoretical underpinnings, at least one court considers the theory, or certain of its aspects, to be analogous to the concept of a continuing trespass in tort law. See *Thompson v. Sawyer*, 219 U.S. App. D.C. 393, 678 F.2d 257, 290 (D.C.Cir.1982) (citing Restatement (Second) of Torts § 899(d)).

In *O'Bar v. Lowe's Home Ctrs., Inc.,* 2007 U.S. Dist. LEXIS 12843  (4th Circ.), the Court clarified, as noted by Judge Boyle in the unpublished opinion in *Reynolds v. Ingram*, 2000 U.S. Dist. LEXIS 7261, 2000 WL 33682680 (E.D.N.C. 2000), the Fourth Circuit has yet to provide clarity on this issue:

> The Fourth Circuit has never delineated what constitutes a "continuing violation." In unpublished decisions, it has taken notice of the tests adopted in other Circuits. See *Emmert v. Runyon*, 178 F.3d 1283, 1999 WL 253632, (4th Cir.1999) (citing *DeNovellis v. Shalala*, 124 F.3d 298, 307 (1st Cir.1997) (finding continuing violation in case in which violation is systemic or serial); *Malhotra v. Cotter & Co*., 885 F.2d 1305, 1310 (7th Cir.1989) (finding continuing

violation whenever "plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory mistreatment"); *Berry v. Board of Supervisors*, 715 F.2d 971, 981 (5th Cir.1983) (finding  continuing violation when three-prong test involving type of conduct, frequency of alleged acts, and degree of permanence of acts is satisfied).

Without deciding which is the proper test in this Circuit, the Court found that the evidence regarding Plaintiffs' compensation discrimination claims was sufficiently alike to constitute together one continuous chain of events, which appears to be a common requirement in all three tests. See *Reynolds*, 2000 U.S. Dist. LEXIS 7261, 2000 WL 33682680 at *4. Because of the nature of the continuing violation, Plaintiffs were not limited to each discrete act (*i.e.,* the initial hiring and offer of compensation) for their claims, so long as the violation continued into the appropriate time period (four years before the date of filing for § 1981 claims; 300 days prior to the date of the EEOC filing for Title VII).  Here, Plaintiff's allegations of the continuous nature of the employer's discriminatory acts show these acts to be clear, dramatic, and extreme.

iii.  **Facts alleged sufficiently uphold a presumption of a common, illicit purpose behind the complained-of acts.**

To determine whether an illicit, illegal motive was behind the acts complained of by Lewis, this Court should consider the factors

from *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252 (1977), to determine whether there was an illicit purpose or illegal motive behind Defendants' opening and closing the competition for the position four successive times in order to avoid hiring a woman, intentionally forcing a highly qualified woman out of the "Acting" position, and placing a lesser qualified male into the position by use of a callous methodic effort to discourage, taunt, and humiliate her.

When there is proof that a discriminatory purpose has been a motivating factor in the decision, judicial deference to administrative decisions is no longer justified. Where a clear pattern emerges, unexplainable on grounds other than discrimination, from the effect of the state action even when the governing rules/ regulation/ legislation appears neutral on its face, the Court must look to other evidence:

1. Historical background of the decision, particularly if it reveals a series of official actions taken for invidious purposes.

2. Specific sequence of events leading up to the challenged decision also may shed some light on the decision-maker's purposes.

3. Departures from the normal procedural sequence.

14

4.  Substantive departures, particularly if the factors usually considered important by the decision-maker strongly favor a decision contrary to the one reached.

5.  Legislative or administrative history, especially where there are contemporary statements by members of the decision-making body, minutes of its meetings or reports.

### iv.  Issuance of EEOC's Right To Sue Letter Is Evidence That Plaintiff Sufficiently Exhausted Her Administrative Remedies With Respect To The Claims Alleged In Her Complaint.

In *Martini v. Fannie Mae*, 336 U.S. App. D.C. 289, the court noted that the 1972 amendments to Title VII established "an integrated, multistep enforcement procedure" prescribing the powers and duties of the EEOC once a discrimination charge has been filed. *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 359, 53 L. Ed. 2d 402, 97 S. Ct. 2447 (1977) (discussing the Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, 86 Stat. 103, 104-07 (codified at 42 U.S.C. § 2000e-5)).

In doing so, they noted: We have no doubt that when Congress wrote section 2000e-5(f)(1) in 1972, it knew all about the long delays in EEOC processing of discrimination charges. *See* S. REP. NO. 92-415, at 23 (1971); H.R. REP. NO. 92-238 (1971), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2147. Congress enacted the 180-day provision as "a means by which [an aggrieved party] may be able to escape from the administrative quagmire which

15

occasionally surrounds a case caught in an overloaded administrative process." 1972 U.S.C.C.A.N. at 2148; *see* S. REP. NO. 92-415, at 23. After the House and Senate passed the 1972 amendments, the Conference Committee explained in a statement accompanying the Conference Report:

> [The 180-day provision] is designed to make sure that the person aggrieved does not have to endure lengthy delays if the Commission … does not act with due diligence and speed. Accordingly, the [180-day provision] allows the person aggrieved to elect to pursue his or her own remedy under this title in the courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution.

In *Shehadeh v. Chesapeake & Potomac Tel. Co.,* 193 U.S. App. D.C. 326, the court reiterated: in states affording administrative remedies for conduct forbidden by Title VII, exhaustion of these remedies is a prerequisite to initiation of a Title VII suit in court. See Title VII, § 706(c), 42 U.S.C. § 2000e-5(c) (1976); *Love v. Pullman Co*., 404 U.S. 522, 92 S. Ct. 616, 30 L. Ed. 2d 679 (1972). See also *EEOC v. Wah Chang Albany Corp*., 499 F.2d 187, 190 (9th Cir. 1974). But a complainant need not resort to the state agency in regard to every incident comprising a continuous series of discriminatory acts, *Weise v. Syracuse Univ*., 522 F.2d 397, 412 (2d Cir. 1975); *Oubichon v. North Am. Rockwell Corp*., 482 F.2d 569, 571 (9th Cir. 1973), and filing with the wrong state agency may

16

in appropriate circumstances be excused. *Taylor v. Vocational Rehabilitation Center,* 10 F.E.P. Cas. 936 (W.D.Pa.1975). When a charge is presented to the Equal Employment Opportunity Commission, oral notification to the state agency by the Commission on behalf of the complainant will suffice. See *Love v. Pullman Co., supra.* Thus, the Commission has undertaken generally to provide such notice when it is apprised of colorable violations of state law, and that procedure has been in effect at all times relevant to the litigation before us. See 29 C.F.R. § 1601.12 (1977).  It is only when a substantial nexus exists between a timely-filed claim and an otherwise time-barred claim that they may be viewed as constituting a single violation, part of which falls within the [180-day] limitations period. *Roberts v. Gadsden Mem. Hosp.*, 835 F.2d 793, 799-800 (11th Cir.), modified, 850 F.2d 1549 (11th Cir. 1988).

## Conclusion

Defendant's point that Plaintiff failed to exhaust her administrative remedies concerning the fifth, final non-selection is moot for these reasons: (1) *McDonell Douglass* does not require that someone other than the party alleging discrimination be hired into the subject position to meet a prima facie standard of failure to promote or non-selection based on gender discrimination; (2) the selection of the male candidate is simply a continuation of the other acts (essentially, after all the damage was done, it only dramatizes the lengths to which the Agency would go in pursuit of its destructiveness towards Plaintiff); and (3) the selection is evidence of the mal-intent and destructiveness of the Defendant-Agency, (even if the selection is after the

fact, it is relevant evidence of the intent of the Agency to inflict harm upon the Plaintiff).

Plaintiff has sufficiently pled facts for the purpose of stating a claim on which actions regarding continuing, persistent violations pursuant to one consistent illicit discriminatory intent/ policy resulted in: failure to promote; failure to pay for services rendered; and continued until the final act resulted in wrongful discharge. However, while there is evidence in the record to support Plaintiff's claims, arguments regarding reprisal, hostile work environment, and constructive discharge as a discrimination claim usually come to the forefront after a reasonable opportunity for discovery. Accordingly, failure to plead a prima facie case of reprisal, hostile work environment, or constructive discharge should not be considered as a part of a decision to grant a motion to dismiss. Further, the issues presented by Plaintiff should be decided by a fact finder, and not summarily dismissed before discovery is granted, precluding Plaintiff's right to her day in court. In addition, Plaintiff's disputation of Defendant's claims by way of providing the proper legal standard on which Plaintiff's claims should be decided is by no means a concession to Defendants' mistaken assumptions.

18

Accordingly, this Plaintiff moves the Court to: (1) deny Defendant's Motion to Dismiss and/ or Motion for Summary Judgment; (2) schedule discovery and a hearing at which Plaintiff's claims may be litigated and appropriate relief granted.

Respectfully submitted,


JOHN F. MERCER
Counsel for Plaintiff
1000 Connecticut Avenue, N.W.,
Suite 600
Washington, D.C. 20036
(240) 535-8758

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing "Plaintiff's Reply To Defendants'

Response Regarding Defendants' Motion To Dismiss and/ or Motion For Summary

Judgment" was mailed postage prepaid to the <u>Office of the Attorney General</u> at <u>441</u>

<u>4th Street, N.W., Sixth Floor South, Washington, D.C. 20001</u> this <u>23rd</u> day of <u>July</u>,

2007.

                Signed:
                    JOHN F. MERCER
                    Counsel for Plaintiff
                    1025 Connecticut Avenue, N.W., Suite 1011
                    Washington, D.C. 20036-5548
                    (240) 535-8758

20

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Tanya D. Lewis, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     C.A. No.: 07-0429 (RMU) |
| | ) |
| | ) |
| District of Columbia, District of | ) |
| Columbia, Department of | ) |
| Consumer and Regulatory Affairs, | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

## <u>ORDER</u>

Upon consideration of Plaintiff's Response Opposing Defendant's Motion to

Dismiss and/ or for Summary Judgment, it is by the Court this _____ day of _____,

2007,

ORDERED:  that Defendants' Motion to Dismiss and/or for Summary Judgment

is hereby DENIED; and it is,

ORDERED that Defendants be required to file an answer to Plaintiff's Complaint;

and it is by this _____ day of _____, 2007; and it is,

FURTHER ORDERED:  that Plaintiff Tanya Lewis's request for a scheduling

conference concerning a schedule of discovery and a trial at which Plaintiff's allegations

may be investigated and litigated is hereby GRANTED.


_____
Judge Ricardo M. Urbina

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Tanya D. Lewis, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 07-0429 (RMU) |
| | ) | |
| | ) | |
| District of Columbia, District of | ) | |
| Columbia, Department of | ) | |
| Consumer and Regulatory Affairs, | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## PLAINTIFF'S LIST OF FACTS NOT IN DISPUTE

1. That the Plaintiff commenced employment with the District of Columbia Consumer and Regulatory Affairs (the "Agency") on February 11, 2002.

2. That Plaintiff is an African-American Female and is a member of two protected groups.

3. That Plaintiff was hired by the Agency as an electrical inspector.

4. That at the time she was employed with the Agency there were no other African-American females or any females in her working unit as electrical inspectors.

5. That the Plaintiff, at the time of commencement of her employment with the Agency, was an experienced master electrician in Washington, D.C and a journeyman electrician in Virginia and Maryland. Also, Plaintiff's career had included such experiences as electrical construction, in-house electrical work and operation of a private electrical company.

6. That on or around May, 2004, the position of "electrical supervisor" (the "Position") became vacant.

1

7.  That being the most qualified employee within her unit to occupy the open the "Position," Plaintiff was temporarily promoted to "acting electrical supervisor" by the Agency to the Position on May 24, 2004.

8.  That during the time Plaintiff occupied the Position, her male superiors, subordinates, and staff held "all male meetings" meetings concerning allocation of work assignments and other responsibilities purposely and surreptitiously without her presence and without her knowledge.

9. That Plaintiff occupied the Position of Acting Electrical Supervisor from May 24, 2004 to September 29, 2005, when, absent reason or explanation, Plaintiff was removed from the Position by the Agency.

10.That the Agency notified the Plaintiff that the Position was opened for candidates on or around April, 2005.

11.  That Plaintiff applied for the Position and her application was accepted on April 20, 2005. She was certified as being qualified. Plaintiff interviewed for the position;

12.  That after accepting all applicants for the Position, other than Plaintiff, all other candidates to be considered for the Position were males. All the males being considered were less qualified for the Position than the Plaintiff. The competition for the position was closed without selection of any of the candidates.

13.  That the Plaintiff inquired but was given no reason for that the competition was closed without a selection.

14.  That the Agency again notified the Plaintiff that the Position was opened for candidates in August 2005.

15.  That Plaintiff submitted her application for the Position on August 11, 2005. Her application was accepted and she was certified as being qualified. Plaintiff interviewed for the Position.

16.  That after accepting all applicants, the competition was closed with the Plaintiff and one other qualified female included among the candidates. The competition for the position was closed without selection of any of the candidates for the Position.

17.  That the Plaintiff inquired but was given no reason that the competition was closed without a selection or as to why she had not been selected for the position. The Plaintiff inquired as to why she had not been selected. She received no explanation.

2

18.  That in October 2005, the Position was again opened for candidates.

19.  That on October 17, 2005, Plaintiff again applied for the position and her application was accepted and she was certified as being qualified. Plaintiff interviewed for the position.

20.  That after accepting all applicants for competition for the Position, the entire pool of candidates, excepting the Plaintiff, and one other qualified female, were males. The competition for the position was closed without selection of any of the candidates. Plaintiff was the most highly qualified applicant among the candidates.

21. That the Plaintiff inquired but was given no explanation as to why the competition for the Position was closed without a selection or as to why she was not selected. On December 23, 2005, Plaintiff was notified by mail from the Agency that the Position had been "Cancelled."

22.  That Plaintiff filed an action alleging discrimination in employment with the District of Columbia Office of Human Rights Human Rights and Minority Affairs ("DCOHR") January 3, 2006. After she filed with DCOHR treatment of Plaintiff by the Agency became more hostile. Her questions about the selection process for the position (written and oral) were not answered. Her requests for payment for the time she served as "acting" received no responses.

23.  That on or around May 1, 2006, the Agency again advertised the Position as being open for candidates.  The Plaintiff was not notified by the Agency that the position was opened; however, she found from inquiring of a personnel employee on the last day the position was opened for applications, and on that day, May 31, 2006, Plaintiff filed her application for the Position.

24.  That Plaintiff's application was accepted and she was certified as being qualified. Plaintiff interviewed for the Position.

25.  That after accepting all applicants other than Plaintiff, all other were males. The competition for the position was closed without selection of any of the candidates. Plaintiff was the most highly qualified applicant among the candidates.

26.  That due  to having filed an EEO Action based upon discrimination (including complaints of disparate treatments, retaliation and reprisal, creation of a hostile working environment, and other acts of discrimination), Plaintiff was wrongfully and constructively discharged from and forced to leave her employment with the Agency on July 10, 2007.

27.  That fewer than three weeks after Plaintiff had left the Agency, the Agency selected a less qualified male candidate for the Position. There was no explanation given to the Plaintiff as to why she had not been selected for the position.

3

28.  That despite numerous inquiries to the director and other managers within the Agency, the Plaintiff was not and still has not been compensated for occupying and acting in the Position.

29.  That although the Plaintiff was the most qualified candidate for the position through five consecutive solicitations and selection proceedings, she was not selected.

30.  That during her entire tenure with the Agency there were no African-American or other females electricians employed within the electrical inspection unit.

31.  That the only reason for Plaintiff's non-selection was that Plaintiff was an African - American female.

32.  That the Plaintiff requested and received a "Right to Sue Letter" from the Washington District Office of the United States Equal Employment Opportunity Commission ("EEOC").

33.  That the Plaintiff filed a timely complaint against the Agency for discrimination and other related wrongs action of discrimination March 5, 2007.

34.  That the Plaintiff has incurred damages from mistreatment by the Agency

35.  That the Plaintiff was forced out of her employment by the Agency.

36.That the Plaintiff suffered physical and psychological damages due to the actions of the Agency

36.  That the Plaintiff suffered economic losses, including attorney fees and costs of litigation based upon the actions of the Defendant.


              Respectfully submitted,


              _____

              John F. Mercer