UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| TANYA D. LEWIS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 07-0429 (RMU) |
| | : | | |
| v. | : | Document No.: | 8 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| and | : | | |
| | : | | |
| DISTRICT OF COLUMBIA DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

This employment discrimination case comes before the court on the defendants'[1] motion to dismiss, or in the alternative, motion for summary judgment.[2] The plaintiff, Tanya D. Lewis, brought suit for discrimination, constructive discharge, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*,

---

[1] Although the plaintiff names both the District of Columbia and the District of Columbia's Department of Consumer and Regulatory Affairs as defendants, it is well established that a plaintiff cannot bring suit against agencies and departments within the District of Columbia government. *See Parker v. District of Columbia*, 216 F.R.D. 128, 130 (D.D.C. 2002). Accordingly, the court dismisses the Department of Consumer and Regulatory Affairs for lack of jurisdiction and hereinafter refers to the defendants in the singular.

[2] Without discovery it is, at this stage, too early to determine the merits of the plaintiff's claims as a matter of law. *See Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997) (holding that "summary judgment ordinarily 'is proper only after the plaintiff has been given adequate time for discovery'" (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988))). Following discovery in this case, the defendant may again move for summary judgment. At that time, the court will consider whether the plaintiff has satisfied her burdens in defeating summary judgment.

and the D.C. Personnel Rules.  Specifically, the plaintiff contends that the defendant discriminated and retaliated against her when it failed to promote her on five separate occasions, failed to adequately compensate her and fostered a hostile work environment.  Because the plaintiff failed to exhaust her administrative remedies for two of the five non-selections, and because the plaintiff failed to oppose the defendant's assertion that no private right of action exists for violating D.C. Personnel Rules, the court grants the defendant's motion to dismiss these claims.  As to the remaining claims, the plaintiff has pled facts with enough heft to overcome the defendant's motion to dismiss.  Finally, the court denies the plaintiff's request to qualify punitive damages as recoverable against the District of Columbia.

## II.  BACKGROUND

### A.  Factual History

The plaintiff is an African-American woman who worked for the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA") as an electrical inspector from February 2002 until her resignation in July 2006.  Pl.'s Am. Compl. ¶¶ 7-8, 19.  Before she joined DCRA, the plaintiff worked as an electrician for 20 years at several private companies in the Commonwealth of Virginia and the District of Columbia.  *Id.* ¶¶ 5-6.

In May 2004, the Chief of the Building Inspection Division at DCRA selected the plaintiff to serve as the Acting Electrical Supervisor ("Acting Supervisor").  *Id.* ¶ 9.  In that position, the plaintiff's job responsibilities included supervising a majority-male staff, overseeing inspection of electrical standards and implementing safety procedures for handling hazardous material.  *Id.* ¶¶ 30, 81.  More than a year after the plaintiff assumed the position of Acting Supervisor, the defendant began soliciting applications for a Permanent Electrical Supervisor

("Permanent Supervisor"). *Id.* ¶¶ 11, 23. The plaintiff submitted an application for the Permanent Supervisor position on April 20, 2005 ("first non-selection"), but the defendant closed the application cycle without selecting a candidate.[3] *Id.* ¶ 11. The plaintiff applied for the position again on August 11, 2005, but the defendant closed the application cycle on August 12, 2005 ("second non-selection") without filling the position. *Id.* ¶¶ 12-13. Shortly after the second non-selection and without explanation, the defendant removed the plaintiff from the position of Acting Supervisor and returned her to her former position as electrical inspector. *Id.* ¶ 14. The plaintiff contends that she was not compensated for the services she rendered as Acting Supervisor, although she served in that capacity for a year and four months. *Id.* ¶¶ 23, 28-29.

While acting as electrical inspector, the plaintiff continued to apply for the Permanent Supervisor position. In three application cycles, she asserts that she was the most qualified applicant among a group of mostly African-American and Caucasian males,[4] but the defendant did not select her. *Id.* ¶¶ 11-18. These non-selections occurred on December 23, 2005 ("third non-selection"), May 1, 2006 ("fourth non-selection")[5] and May 31, 2006 ("fifth non-selection"). *Id.* ¶¶ 15, 17-18. After five application cycles within thirteen months, all resulting in non-selections, and after alleged "wrongful, psychological torment and interference with her ability to

---

[3] Neither the plaintiff nor the defendant has proffered the exact date of the first non-selection. *See generally* Pl.'s Am. Compl., Def.'s Mot., Pl.'s Opp'n and Def.'s Reply.

[4] During the third application cycle, another African-American woman applied for the Permanent Supervisor position. Pl.'s Am. Compl. ¶ 15. During every other application cycle, the plaintiff asserts that she was the only female applicant. *Id*.

[5] While the parties do not provide a date for the fourth non-selection, the latest date the plaintiff could have been made aware of her non-selection was May 1, 2006, the date she submitted her fifth application to be Permanent Supervisor. *See Aceto v. England*, 328 F. Supp. 2d 1, 7 (D.D.C. 2004) (determining that an EEOC charge starts to run when the plaintiff "has a reasonable suspicion that [s]he has been the victim of discrimination").

work" through "open recalcitrance, discourtesy and insubordination by her subordinates" and "lack of support from her Superiors," the plaintiff resigned from DCRA on July 7, 2006. *Id.* ¶¶ 19, 33-34. Later that month, the plaintiff learned that DCRA selected an African-American male, who had worked under her supervision, to fill the position. *Id.* ¶ 22.

The plaintiff first filed a complaint with DCRA on January 3, 2006, for discrimination regarding her third non-selection. *Id.* ¶ 16. Several months later, on March 16, 2006, the plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"), claiming "disparate treatment in the denial of a promotion and a hostile work environment on the basis of [] race, gender, and matriculation." Def.'s Mot. for Summ. J. ("Def.'s Mot."), Ex. 1 ("EEOC Compl."). The plaintiff did not include allegations of retaliation or constructive discharge in her EEOC complaint. *Id.* On December 4, 2006, after more than 180 days had passed since the plaintiff filed her complaint, the EEOC issued a right to sue letter stating that it had terminated its processing of the complaint. Pl.'s Compl., Ex. 1.

### B. Procedural History

The plaintiff filed a complaint in this court on March 5, 2007, and shortly thereafter, she filed an amended complaint outlining six counts of gender discrimination, one count of discrimination in violation of the District of Columbia Personnel Rules, one count of retaliation, one count of hostile work environment, and one count of constructive discharge. *See generally* Pl.'s Am. Compl. On June 1, 2007, the defendant filed a motion to dismiss for failure to state a claim, or in the alternative, for summary judgment. Def.'s Mot. at 1-2. In her opposition to the defendant's motion, the plaintiff raised, for the first time, a claim of race discrimination. Pl.'s Opp'n at 8. The court now turns to the defendant's motion.

### III.  ANALYSIS

### A.  The Court Grants in Part and Denies in Part the Defendant's Motion to Dismiss

#### 1.  Subject Matter Jurisdiction

When Congress requires the exhaustion of administrative remedies as an antecedent to judicial review, it is "rooted, not in prudential principles, but in Congress' power to control the jurisdiction of federal courts."  *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243 (D.C. Cir. 2004); *accord Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006).  Thus, before addressing the substantive issues of this case, the court must establish its jurisdiction to adjudicate the plaintiff's claims.

#### a.  Legal Standard to Dismiss *Sua Sponte*

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).  "A claim that the court lacks jurisdiction under Article III of the Constitution may not be waived, since the jurisdiction at issue goes to the foundation of the court's power to resolve a case, and the court is obliged to address it *sua sponte*."  *Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996).  The plaintiff bears the burden of establishing that the court has subject-matter

jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### b. Legal Standard for Exhaustion of Administrative Remedies

In actions brought under Title VII, a court has authority over only those claims that are (1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff exhausted administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v. Serv. Master Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997). It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and

6

proving it"). Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden. *Id.* at 12 (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies. *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

### c. The Court Denies the Defendant's Motion to Dismiss the Plaintiff's Claims Regarding the First Non-Selection

The defendant moves to dismiss the plaintiff's claim for the first non-selection because the plaintiff failed to file an EEOC complaint within 300 days of the alleged discriminatory act. Def.'s Mot. at 4. Even though 330 days elapsed between the plaintiff's April 20, 2005 application and the filing of her EEOC complaint on March 16, 2006, the plaintiff contends that the otherwise time-barred claim is substantially related to the timely-filed claims and "may be viewed as constituting a single violation." Pl.'s Opp'n at 24.

Although the parties fail to raise the issue, it is important to note that the 300-day period for filing an EEOC charge starts to run when the plaintiff "has a reasonable suspicion that [s]he has been the victim of discrimination." *Aceto v. England*, 328 F. Supp. 2d 1, 7 (D.D.C. 2004); *see also McCants v. Glickman*, 180 F. Supp. 2d 35, 40 (D.D.C. 2001); *Paredes v. Nagle*, 1982 WL 319, at *4 (D.D.C. Jan. 17, 1982); 42 U.S.C. § 2000e-5(e)(1). For the first non-selection, while the parties agree that the plaintiff applied for the Permanent Supervisor position on April 20, 2005, the defendant fails to proffer any evidence regarding the date of the non-selection – or

7

the date on which the plaintiff had a reasonable suspicion she was the victim of discrimination. *See generally* Def.'s Mot.  Because the defendant fails to proffer evidence of the date for the first non-selection, it fails to satisfy its burden of proof that the plaintiff did not exhaust her administrative remedies.  *Brown*, 777 F.2d at 13.  As a result, the court denies the defendant's motion to dismiss the plaintiff's claim regarding the first non-selection.

### d. The Court Dismisses the Plaintiff's Claims Regarding the Fourth and Fifth Non-Selections

The defendant moves to dismiss the plaintiff's claim of gender discrimination arising out of the fifth non-selection because the claim is time-barred for failure to exhaust administrative remedies.  Def.'s Mot. at 4-5.  While the plaintiff's EEOC complaint includes allegations of discrimination from the first, second, and third non-selections, the plaintiff failed to include the fourth and fifth non-selections in her EEOC complaint.  *Id.*  The plaintiff counters that this is of no moment because a "substantial nexus exists between [the] timely-filed claim and [the] otherwise time-barred claim [and therefore,] they may be viewed as constituting a single violation."  Pl.'s Opp'n at 24.

The Supreme Court has provided guidance in evaluating whether specific discriminatory actions can be joined together to satisfy the exhaustion requirement.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  The Court ruled that "each incident of discrimination [] constitutes a separate actionable 'unlawful employment practice.'"  *Id.*  Accordingly, the Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Id.*  Circuits are split on how broadly to construe the Supreme Court's holding.

As outlined in *Jones v. University of the District of Columbia*, 505 F. Supp. 2d. 78 (D.D.C. 2007), the Eighth Circuit interprets the *Morgan* holding narrowly and continues to use

8

the reasonably related test where "subsequent retaliatory acts [are] of a like kind to the retaliatory acts alleged in the EEOC charge, [and are] specified to be of an ongoing and continuing nature." *Wedow v. City of Kan. City, Mo.*, 442 F.3d 661, 673-74 (8th Cir. 2006). Under the reasonably related test, a court may review claims that were not brought before the EEOC, even if the plaintiff has not first exhausted administrative remedies for those claims. *Id*. at 673-74 (holding that the plaintiffs' claims of gender discrimination and retaliation, occurring after the filing of the EEOC complaint, were reasonably related to the claims in their EEOC complaints because a reasonable investigation arising from the EEOC complaints would encompass present and future retaliatory acts that were alleged to be ongoing and continuous). But the Eighth Circuit notes that, in light of *Morgan*, it has "narrowed its view of what acts are sufficiently related to be within the scope of the properly filed administrative charges." *Id.* at 673.

The Tenth Circuit, on the other hand, interprets the Supreme Court's holding broadly. Whereas the Supreme Court's decision barred untimely, but related, incidents occurring prior to the filing of an EEOC complaint, the Tenth Circuit expanded the holding to require exhaustion of remedies for related "incidents occurring *after* the filing of [the] plaintiff's EEO complaint." *Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (concluding that "*Morgan* abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with a framework where each discrete incident of discriminatory treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted").

Although the D.C. Circuit Court has declined to weigh in on the issue, *Weber v. Battista*, 494 F.3d 179, 183-84 (D.C. Cir. 2007), three courts in this district have. In two of the cases, the courts found that *Morgan* overruled this circuit's "reasonably related" standard and established a

9

discrete acts framework for determining whether claimants have exhausted their administrative remedies. *See Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 148-50 (D.D.C. 2005) (Lamberth, J.); *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 138 (D.D.C. 2004) (Friedman, J.). In the third case, however, the court limited the holding in *Morgan* to determining the timeliness of a claim, declining to extend the discrete acts framework to the exhaustion of remedies requirement. *Hazel v. Wash. Metro. Area Transit Auth.*, 2006 WL 3623693, at *8 (D.D.C. Dec. 4, 2006) (Roberts, J.). The court drew from a post-*Morgan* D.C. Circuit opinion, which held that a court could not entertain additional incidents omitted from an EEOC complaint unless those incidents were within the "scope of any investigation that reasonably could have been expected to result from [the] initial charge of discrimination."[6] *Id.* (citing *Lane v. Hilbert*, 2004 WL 1071330, at *1 (D.C. Cir. May 12, 2004) (unreported)).

In this case, the plaintiff's EEOC complaint alleged three discriminatory non-selections between April 20, 2005 and December 23, 2005. Pl.'s Am. Compl. ¶¶ 10-15, 40-56. Applying a narrow reading of *Morgan*, consistent with this Circuit's post-*Morgan* jurisprudence, the court must consider whether an investigation arising from the plaintiff's EEOC complaint would encompass the fourth and fifth non-selections. *See Parisi v. Boeing Co.*, 400 F.3d 583, 586 (8th Cir. 2005) (barring claims of discrimination that did not appear in the plaintiff's EEOC questionnaire); *see also Shelton v. Boeing Co.*, 399 F.3d 909, 912-13 (8th Cir. 2005) (barring alleged incidents of discrimination that occurred after the end date on the EEOC questionnaire).

---

[6] The court notes that this is the same rationale given by the Eighth Circuit in continuing "to adhere to a narrow reading of [the] exhaustion exception." *Wedow v. City of Kan. City, Mo.*, 442 F.3d 661, 674 (8th Cir. 2006) (noting that "[w]e do not require that subsequently-filed lawsuits mirror the administrative charges as long as the sweep of any subsequent judicial complaint is no broader than the scope of the EEOC investigation which could reasonably be expected to grow out of the charge filed in the EEOC complaint") (citing *Duncan v. Delta Consol. Indus. Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004) (internal quotations omitted)).

The plaintiff's EEOC complaint describes discrete acts of discrimination occurring from May 24, 2004 until December 23, 2005. EEOC Compl. The plaintiff failed to allege that the defendant's behavior was ongoing, continuous or motivated by retaliation. *Id.*; *see Hazel*, 2006 WL 3623693, at *7-8; *Wedow*, 442 F.3d at 674 (distinguishing allegations of discrete acts of discrimination occurring subsequent to an EEOC filing but unrelated to the scope of the EEOC charges with claims speaking of ongoing and continuing acts). Because the plaintiff failed to allege that the three non-selections in her EEOC complaint were part of a continuous and ongoing pattern, a reasonable investigation would not proceed beyond the dates of those discrete acts.[7] *See id.* Accordingly, the fourth and fifth non-selections are not reasonably related to the plaintiff's EEOC complaint, and the plaintiff has not exhausted her administrative remedies as to these non-selections. The court, therefore, grants the defendant's motion to dismiss claims relating to the fifth non-selection and dismisses *sua sponte* claims relating to the fourth non-selection.[8]

---

[7]     Hostile work environment, on the other hand, is by definition an ongoing and continuous practice. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Thus, the defendant's allegation that the plaintiff's hostile work environment claim is time barred is baseless as to the hostile acts the plaintiff alleges occurred within 300 days of filing the EEOC complaint. Def.'s Mot. at 6-7; Def.'s Mot., Ex. 1 ("EEOC Compl.") (asserting that the defendant ostracized her, discriminated against her, harassed her and undermined her authority); 42 U.S.C. 2000e-5(e) (requiring a charge to be filed "within three hundred days after the alleged unlawful employment practice occurred").

[8]     The defendant also moves to dismiss the plaintiff's claim of retaliation because she failed to exhaust her administrative remedies by not including the claim in her EEOC complaint. Def.'s Mot. at 5-6. "[A] plaintiff need not exhaust administrative remedies to file a retaliation claim in court." *Jones v. Greenspan*, 402 F. Supp. 2d 294, 298 (D.D.C. 2005) (quoting *Turner v. Dist. of Columbia*, 383 F. Supp. 2d 157, 178 (D.D.C. 2005)). "The proposition that exhaustion is unnecessary for retaliation claims stems, in part . . . from the fear that filing a separate charge will result in more retaliation, and that a retaliation claim is necessarily related to the underlying charge." *Id.*

11

### 2. Failure to State a Claim

#### a. Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, the plaintiff must allege a "plausible entitlement to relief," by setting forth "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967, 1969 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint "does not need detailed factual allegations." *Id.* at 1964, 1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61,

64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.

### b. The Court Denies the Defendant's Motion to Dismiss the Plaintiff's Constructive Discharge Claim

The defendant insists that the plaintiff "has alleged no facts that would support constructive discharge by the District." Def.'s Mot. at 8. The plaintiff, while not citing to her complaint, responds by concluding that the failure to promote her did constitute constructive discharge, Pl.'s Opp'n at 19-23, and cites *Clark v. Marsh*, in which the D.C. Circuit held that "historic discrimination . . . , repeated but futile attempts to obtain relief from that discrimination, and the predictable humiliation and loss of prestige accompanying her failure to obtain this particular position constitute" constructive discharge. *Clark v. Marsh*, 665 F.2d 1168, 1175-76 (D.C. Cir. 1981). After analyzing this issue – a feature sidelined by both of the parties in their rush to deliver a conclusion – the court determines that the plaintiff's amended complaint is sufficient to support a claim of constructive discharge.

To succeed on a constructive discharge claim, a plaintiff "must show that the employer deliberately created intolerable work conditions that forced the plaintiff to quit." *Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006). The claim "must be predicated on a showing of either intentional discrimination or retaliation," *Mayers v. Laborers' Health & Safety Fund*, 478 F.3d 364, 370 (D.C. Cir. 2007) (citing *Carter v. George Wash. Univ.*, 387 F.3d 872, 883 (D.C. Cir. 2004)), but "the mere existence of workplace discrimination is insufficient to make out a constructive discharge claim." *Veitch*, 471 F.3d at 130. "Constructive discharge . . . requires a

finding of discrimination *and* the existence of certain aggravating factors.'" *Id.* (quoting *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997)). "Aggravating factors are those aspects of a discriminatory work environment that, by making the workplace so disagreeable, prevent the reasonable employee from seeking remediation on the job." *Id.*

The plaintiff's complaint alleges that the defendant chose not to promote her to the position of Permanent Supervisor on five separate occasions within approximately one year. *See generally* Pl.'s Am. Compl. She further asserts that the defendant ignored her requests for explanations as to why she was not selected. *Id.* ¶ 24. Additionally, she maintains that the defendant improperly removed her from the position of Acting Supervisor and failed to compensate her for the services provided as Acting Supervisor. *Id.* ¶¶ 14, 28. While the plaintiff avows that she has made "several demands" for this additional compensation, the defendant has neither provided the requested compensation nor an explanation for its denial. *Id.* ¶ 29. Thus, the plaintiff's allegations depict her as "essentially locked into a position from which she c[an] apparently obtain no relief." *Clark v. Marsh*, 665 F.2d 1168, 1174 (D.C. Cir. 1981) (upholding a district court's decision awarding relief based on constructive discharge). Moreover, the plaintiff contends that she suffered "wrongful, psychological torment and interference with her ability to work" through "open recalcitrance, discourtesy and insubordination by her subordinates" tolerated and perpetuated by her Superiors. *Id.* ¶¶ 33-34, 82-83. This torment, she maintains, resulted in "anxiety, depression, lack of sleep, weight gain and loss of hair requiring her to seek professional help," and ultimately "creat[ed] untenable and intolerable conditions . . . forc[ing] the plaintiff out of her position." *Id.* ¶¶ 88, 97. Because the plaintiff sets forth sufficient "aggravating factors" to plead constructive discharge, the court denies the defendant's motion to dismiss for failure to state a claim. *See Russ v. Scoyoc Assocs., Inc.*, 59 F. Supp. 2d 20, 26

(D.D.C. 1999) (denying a motion to dismiss a constructive discharge claim where the plaintiff alleged that the employer tolerated repeated discriminatory and threatening behavior).

### c. The Court Denies the Defendant's Motion to Dismiss the Plaintiff's Hostile Work Environment Claim

Turning to the hostile work environment claim, the defendant contends that it too is deficient and should be dismissed for failure to state a claim. Def.'s Mot. at 6. Because the plaintiff's allegations demonstrate "intolerable work conditions that forced the plaintiff to quit," *Veitch*, 471 F.3d at 130, it follows *a fortiori* that they rise to the level of abuse necessary to support a claim of hostile work environment. *See Pa. State Police v. Suders*, 542 U.S. 129, 133-134 (2004); *see also Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir 2003) (recognizing that "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'" (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986))). Many of the plaintiff's allegations are broadly stated,[9] but nevertheless, the plaintiff's complaint has sufficient factual heft to survive a motion to dismiss – to wit, the five claims of non-selection coupled with the allegation of "purposeful and unfair collusion against the plaintiff by her superiors by creating an untenable and intolerable working situation where plaintiff's authority was subverted to the extent that on a daily basis plaintiff was confronted with open recalcitrance, discourtesy and insubordination by her subordinates." Pl.'s Am. Compl. ¶ 34. Indeed, a complaint "does not need detailed factual allegations," *Twombly*, 127 S. Ct. at 1964, because "simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose

---

[9] The plaintiff alleges that the defendant "impeded" her work "by continually, intentionally, purposely and insidiously isolating, degrading, ignoring, frustrating her," which left her "defeated, demoralized and professionally impeded." Pl.'s Am. Compl. ¶¶ 82-83.

15

more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues," *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). Accordingly, the court denies the defendant's motion to dismiss the plaintiff's hostile work environment claim.

### d. The Court Grants the Defendant's Motion to Dismiss the Plaintiff's Claims for Violations of D.C. Personnel Rules

The defendant avers that the "[p]ersonnel laws give [the] plaintiff no private right of action . . . and [she] must seek relief through . . . the Public Employee Relations Board." Def.'s Mot. at 7. The plaintiff does not address this issue in her opposition. *See generally* Pl.'s Opp'n. "[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded." *Fox v. Am. Airlines, Inc.*, 2003 WL 21854800, at *2 (D.D.C. Aug. 5, 2003). Because the plaintiff has failed to respond to the defendant's argument, the court, in its discretion, grants the defendant's motion to dismiss the plaintiff's claims regarding violations of D.C. Personnel Rules.

### e. The Court Denies the Defendant's Motion to Dismiss the Plaintiff's Gender[10] Discrimination Claims

The defendant requests that the court dismiss the plaintiff's gender discrimination claims because she fails to allege that "other equally or less qualified employees who were not members of the protected class (males), were promoted." Def.'s Mot. at 4. The prevailing legal winds, however, tear the defendant's argument asunder on two independent fronts. First, the plaintiff

---

[10]   It is worth noting that the plaintiff raises for the first time allegations of racial discrimination in her opposition to the defendant's motion to dismiss. Pl.'s Opp'n at 8-9. Because "[t]he factual basis for [the plaintiff's] 'new' claim [is] substantially similar" to the factual basis for her gender discrimination claim, *i.e.*, the three surviving non-selections, and because the defendant does not show how allowing the claim would cause undue prejudice, the court does not dismiss the race discrimination claim. *Wiley v. Glassman*, 2007 WL 4354431, at *6. After all, "[t]he federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining a defense upon the merits. *Id.* at *6-7 (citing 5 FED. PRAC. & PROC. § 1219 (3d ed. 2004)).

need not plead all the elements of a prima facie case to withstand a motion to dismiss. *Swierkiewicz*, 534 U.S. at 511-14 (holding that "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply to every employment discrimination case"). Second, the defendant incorrectly states the elements of a prima facie case, basing its argument on the Eleventh Circuit's legal standard, which is not followed in this Circuit. Def.'s Mot. at 2. To establish a prima facie case of gender discrimination in this Circuit, a plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). The Circuit maintains no requirement, unlike the Eleventh Circuit, that the defendant select an individual outside the protected class. *Compare Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006) (noting that "even in failure-to-hire cases we impose no requirement that the employer filled the sought-after position with a person outside the plaintiff's protected class) *with Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000) (requiring "other equally or less qualified employees who are not members of the protected minority [to be] promoted"). Thus, the defendant has not shown that the plaintiff's claims are deficient, and the court denies the defendant's motion to dismiss.

### B. The Plaintiff may not Recover Punitive Damages Against the District of Columbia

The plaintiff contends that punitive damages are available against the District of Columbia because "Title VII and D.C. Human Rights Act remedies are available to an employee who presents a prima facie case of discrimination." Pl.'s Opp'n at 23. The defendant insists, however, that Title VII and the D.C. Human Rights Act do not allow recovery of punitive

damages and that the plaintiff's allegations do not constitute "extraordinary circumstances" to allow for such recovery. Def.'s Reply at 5. The defendant is correct on all accounts.

The Supreme Court has recognized that "[w]ith the passage of the 1991 Act, Congress provided for additional remedies, including punitive damages, for certain classes of Title VII . . . violations." *Kolstad v. ADA*, 527 U.S. 526, 534 (1999). This Act, however, expressly prohibits a plaintiff from recovering punitive damages from "a government, government agency or political subdivision." 42 U.S.C. § 1981a(b)(1); *see Webb v. Hyman*, 861 F. Supp. 1094, 1118 (D.D.C. 1994) (holding that punitive damages may not be awarded against the District of Columbia in a Title VII case). Furthermore, the D.C. Human Rights Act – which the plaintiff only mentions in her opposition to the defendant's motion and not in her complaint – does not expressly provide for punitive damages, D.C. Code § 2-1403.13, and the D.C. Circuit "and the District of Columbia Court of Appeals have held that, absent 'extraordinary circumstances,' punitive damages are unavailable against the District of Columbia under District of Columbia law." *Butera v. District of Columbia*, 235 F.3d 637, 658 (D.C. Cir. 2001).

"Extraordinary circumstances . . . refer to circumstances such as where a jurisdiction's taxpayers are directly responsible for perpetrating the policies that caused the plaintiff's injuries or where a municipality or its policymakers have intentionally adopted the unconstitutional policy that caused the damages in question." *Id.* (internal quotation marks omitted). Such circumstances are not present in this case where the defendant's alleged discriminatory behavior, if true, does not include intentionally enacting an unconstitutional policy and does not reflect the will of the taxpayers. *See generally* Compl. The plaintiff has not counterbalanced the equities precluding her from recovering punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 (1987) (holding that "punitive damages imposed on a municipality are in

effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction in public services for the citizens footing the bill[; n]either reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers"). Accordingly, the court denies the plaintiff's request to recover such damages.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's motion to dismiss and denies the plaintiff's request to recover punitive damages. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 24th day of January, 2008.

RICARDO M. URBINA  
United States District Judge