# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| TANYA D. LEWIS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 07-0429 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 38, 43 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This employment discrimination case is before the court on the parties' cross-motions for summary judgment. The plaintiff, an African-American woman, alleges that the defendant discriminated against her on the basis of her gender and has asserted claims for disparate treatment, retaliation, hostile work environment and constructive discharge, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* Specifically, the plaintiff contends that the defendant discriminated and retaliated against her by refusing to promote her on multiple occasions and fostered a hostile work environment that resulted in her resignation.

The court concludes that the plaintiff has set forth a prima facie of discrimination in connection with her non-selection claims and, as a result, denies the defendant's motion for summary judgment with respect to these claims. Moreover, because the defendant has failed to articulate a legitimate, nondiscriminatory justification for the plaintiff's non-selections, the court

grants the plaintiff's cross-motion for summary judgment on these claims. The court concludes, however, that the plaintiff has failed to raise a genuine issue of material fact with respect to her retaliation, hostile work environment and constructive discharge claims. Accordingly, the court grants summary judgment to the defendant on those claims.

## II. BACKGROUND

### A. Factual Background

Beginning in February 2002, the plaintiff worked as an electrical inspector for the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA"). Pl.'s Am. Mot. for Summ. J. ("Pl.'s Mot.") at 4. Prior to joining the DCRA, the plaintiff had worked for twenty years as an electrician in Virginia and the District of Columbia. *Id.* In May 2004, the DCRA selected the plaintiff to serve as Acting Electrical Supervisor. *Id.* In that position, the plaintiff's job responsibilities included supervising a largely male staff, overseeing inspection of electrical standards and implementing safety procedures for the handling of hazardous materials. *Id.*

In April 2005, the DCRA began soliciting applications for the position of Permanent Electrical Supervisor. Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 2. The plaintiff submitted her application for the position, and was deemed qualified, *see* Pl.'s Mot., Ex. 6, but the DCRA closed the application cycle on June 9, 2005 without selecting a candidate ("the first non-selection"). Def.'s Mot. at 2. At the time she applied, no woman had previously occupied the position of Permanent Electrical Supervisor. Pl.'s Mot. at 6-7.

In August 2005, the DCRA advertised the position for a second time. Def.'s Mot. at 2. The plaintiff submitted another application, as did several male candidates, some of whom

worked under the plaintiff's supervision at the time.  Pl.'s Mot. at 7.  The DCRA closed the application cycle on September 28, 2005, again without selecting a candidate for the position ("the second non-selection").  Def.'s Mot. at 2.

Shortly after the second non-selection, and without explanation, the DCRA removed the plaintiff from the position of Acting Electrical Supervisor and returned her to her former position as electrical inspector.  Am. Compl. ¶ 14.  The plaintiff contends that she was not compensated for the services she rendered as Acting Electrical Supervisor, despite the fact that she served in that capacity for over a year.  Id. ¶¶ 28-29.

On October 3, 2005, the DCRA again solicited applications for the Permanent Electrical Supervisor position.  Def.'s Mot. at 2-3.  The plaintiff applied, but once again, the DCRA closed the application cycle at the end of October without selecting a candidate ("the third non-selection").  Id. at 3.  The DCRA advertised the position two more times in 2006, and the plaintiff applied on both of those occasions ("the fourth and fifth non-selections").  Id.  At the close of the fifth application cycle, the DCRA selected William Davidson, an African-American male, to serve as Permanent Electrical Supervisor.  Id. at 3.

Davidson resigned from the position in December 2007, allegedly on the grounds that he was not qualified to serve as Permanent Electrical Supervisor and was not licensed as a Master Electrician in the District of Columbia.  Id. at 8 & Ex. 3 (Aff. of Mohammed Ali) ("Ali Aff.") ¶¶ 18-19.[1]  The plaintiff notes that at the time she applied, she had been serving as Acting Electrical

---

[1]     Ali worked as an electrical engineer for the DCRA for twenty-three years and was, for a time, the plaintiff's supervisor.  Ali Aff. ¶¶ 2-3.  He states that he believes William Davidson resigned in late 2007, and that "it was [his] understanding that [Davidson] resigned because lacked qualifications for the position and he was not licensed in the District of Columbia as a Master or Journeyman Electrician."  Id. ¶ 19.  He further states he believes the plaintiff was the most qualified person to apply for the position and that her qualifications exceeded those of the individual ultimately selected.  Id. ¶ 21.

Supervisor for over a year, was licensed as a Master Electrician in the District of Columbia and Virginia, had taught a course at a community college, had received a masters degree in business administration and was the only candidate who qualified for the District of Columbia's residency preference.[2] *Id*. at 4, 8-9.

After participating in five application cycles within thirteen months, all resulting in her non-selections, and after allegedly being subjected to "wrongful, psychological torment and interference with her ability to work" through "open recalcitrance, discourtesy and insubordination by her subordinates" and "lack of support from her Superiors," the plaintiff resigned from the DCRA on July 7, 2006. Am. Compl. ¶¶ 19, 33-34.

The plaintiff first filed a complaint with the DCRA on January 3, 2006, alleging discrimination in connection with her third non-selection. *Id*. ¶ 16. On March 16, 2006, the plaintiff filed a complaint with the EEOC, claiming "disparate treatment in the denial of a promotion and a hostile work environment on the basis of . . . race, gender, and matriculation." Def.'s Mot. to Dismiss, Ex. 1. The plaintiff did not include allegations of retaliation or constructive discharge in her EEOC complaint. *Id*. On December 4, 2006, after more than 180 days had passed since the plaintiff filed her complaint, the EEOC issued a right to sue letter stating that it had terminated its processing of the complaint. Am. Compl., Ex. 1.

## B. Procedural History

The plaintiff filed a complaint in this court on March 5, 2007, *see generally* Compl., and shortly thereafter, filed an amended complaint setting forth six counts of gender discrimination, one count of discrimination in violation of the District of Columbia Personnel Rules, one count of retaliation, one count of hostile work environment and one count of constructive discharge,

---

[2]   D.C. CODE § 1-608.01(e) provides that bona fide residents of the District of Columbia shall be given a preference when applying for positions within the District of Columbia government.

*see generally* Am. Compl. On January 24, 2008, the court granted in part and denied in part the

defendant's motion to dismiss the complaint. *See* Mem. Op. (Jan. 24, 2008) at 1-2. Specifically,

the court dismissed the claims predicated on the fourth and fifth non-selections on the grounds

that the plaintiff had failed to include those claims in her administrative complaint. *Id.* at 8-11.

The court also dismissed the plaintiff's claim based on a violation of the D.C. Personnel Rules.

*Id.* at 16. The court, however, denied the defendant's motion to dismiss the plaintiff's remaining

claims.[3] *See generally id.*

On February 17, 2009, the defendant filed a motion for summary judgment. *See*

*generally* Def.'s Mot. The plaintiff filed her own motion for summary judgment on February 17,

2009 and filed an amended summary judgment motion one week later on February 23, 2009. *See*

*generally* Pl.' Mot. Both parties assert that there is no issue of material fact with respect to any

of the plaintiff's remaining claims. *See generally* Def.'s Mot.; Pl.'s Mot. The court now

addresses the arguments set forth in the parties' submissions.

## III. ANALYSIS

### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also*

---

[3]     As noted in the court's January 24, 2008 memorandum opinion, the plaintiff raised allegations of racial discrimination for the first time in her opposition to the defendant's motion to dismiss. Mem. Op. (Jan. 24, 2008) at 16 n.10. Although the court declined to dismiss those allegations, *see id.*, the plaintiff raises only allegations of gender discrimination in her motion for summary judgment and opposition to the defendant's motion for summary judgment, *see generally* Pl.'s Opp'n, Pl.'s Mot., Pl.'s Reply. Accordingly, the court grants summary judgment to the defendant on the plaintiff's racial discrimination claims.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

6

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish

proof of discrimination, the court should view summary-judgment motions in such cases with

special caution. *See Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997),

overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v.*

*Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

## B. The Court Denies Summary Judgment to Both Parties on the Claims Premised on the Plaintiff's Non-Selections

### 1. Legal Standard for Gender Discrimination

Generally, to prevail on a claim of sex discrimination under Title VII, a plaintiff must

follow a three-part burden-shifting analysis generally known as the *McDonnell Douglas*

framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). The Supreme Court

explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence
> a prima facie case of discrimination.  Second, if the plaintiff succeeds in proving
> the prima facie case, the burden shifts to the defendant "to articulate some
> legitimate, nondiscriminatory reason for the employee's rejection" . . . .  Third,
> should the defendant carry this burden, the plaintiff must then have an opportunity
> to prove by a preponderance of the evidence that the legitimate reasons offered by
> the defendant were not its true reasons, but were a pretext for discrimination . . . .
> The ultimate burden of persuading the trier of fact that the defendant intentionally
> discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted)

(quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of discrimination in the context of a non-selection claim,

the plaintiff must show "(i) that [s]he belongs to a [protected class]; (ii) that [s]he applied and

was qualified for a job for which the employer was seeking applicants; (iii) that, despite h[er]

qualifications, [s]he was rejected; and (iv) that after h[er] rejection, the position remained open

and the employer continued to seek applicants from persons of [the plaintiff's] qualifications."

*Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1149-50 (D.C. Cir. 2004). "The burden of

establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253.

If the plaintiff establishes a prima facie case, a presumption then arises that the employer

unlawfully discriminated against the employee. *Id.* at 254. To rebut this presumption, the

employer must articulate a legitimate, non-discriminatory reason for its action. *Id.* The

employer "need not persuade the court that it was actually motivated by the proffered reasons."

*Id.* Rather, '[t]he defendant must clearly set forth, through the introduction of admissible

evidence, reasons for its actions which, if believed by the trier of fact, would support a finding

that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor*

*Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

If the employer successfully presents a legitimate, non-discriminatory reason for its

actions, "the McDonnell Douglas framework – with its presumptions and burdens – disappears,

and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal

citations omitted); *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives,Brady*,

520 F.3d 490, 494 (D.C. Cir. 2008) (noting that "the prima facie case is a largely unnecessary

sideshow"). The district court need resolve only one question: "Has the employee produced

sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory

reason was not the actual reason and that the employer intentionally discriminated against the

employee on the basis of race, color, religion, sex, or national origin?" *Brady*, 520 F.3d at 494.

The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima

facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation,

and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka*, 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

### 2. The Plaintiff's Non-Selection Claims

The defendant asserts that the plaintiff has failed to make out a prima facie case of disparate treatment based on her remaining non-selection claims. Def.'s Mot. at 6-10. The defendant notes that rather than rejecting her application, the DCRA cancelled each of the first three vacancy announcements without hiring anyone, male or female, for the position. *Id.* at 7-8. Accordingly, the defendant argues that the plaintiff cannot show that the DCRA continued to solicit applications from individuals of her qualifications after she was rejected, as required by the fourth element of the prima facie case. *Id.* In addition, the defendant contends that the plaintiff has offered no evidence suggesting that the first three vacancy announcements were cancelled for discriminatory reasons. *Id.* at 9.

The plaintiff contends that she was the most qualified applicant each time the Permanent Supervisor position was advertised, that the DCRA has offered no explanation for its serial cancellations of the vacancy announcements and that the DCRA ultimately hired an individual far less qualified than her for the position. Pl.'s Opp'n at 11-13; Pl.'s Mot. at 10-15. These

facts, the plaintiff maintains, set forth a prima facie case of disparate treatment.[4]  Pl.'s Opp'n at

11-13.  Furthermore, the plaintiff contends that because the defendant has offered no legitimate,

non-discriminatory reason for her non-selection, she is entitled to summary judgment on these

claims.  Pl.'s Mot. at 10-15.

> This Circuit has made clear that in the *McDonnell Douglas* context,
>
> the burden of establishing a prima facie case 'is not onerous.'  Its function is
> limited to eliminating the two most common nondiscriminatory reasons for a
> plaintiff's rejection: 'an absolute or relative lack of qualifications or the absence
> of a vacancy in the job sought.'  'Elimination of these reasons for the refusal to
> hire . . . is sufficient, absent other explanation, to create an inference that the
> decision was a discriminatory one.'

*Cones*, 199 F.3d at 516 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44

(1977) and *Burdine*, 450 U.S. at 253).  As *Cones* makes clear, the fourth element of the prima

facie case – that the position remained open and the employer continued to seek applicants after

the plaintiff's rejection – is intended to eliminate non-selection cases in which there was no

available vacant position.  *See id.*; *see also Morgan v. Fed. Home Loan Mortgage Corp.*, 328

F.3d 647, 652 (D.C. Cir. 2003) (holding that the district court properly granted summary

judgment to the defendant because the plaintiff "failed to raise a genuine issue that the . . .

position for which he applied was one for which the employer was seeking applicants") (internal

quotations removed); *Hayslett v. Perry*, 332 F. Supp. 2d 93, 100 (D.D.C. 2004) (dismissing the

---

[4]     The plaintiff also suggests that to withstand the defendant's prior motion to dismiss, she
necessarily "established a *prima facie* case" of disparate treatment, such that the burden "shifted
to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's non-selection."
Pl.'s Mot. at 10.  This line of reasoning evinces confusion regarding the basic differences between
a motion to dismiss and a motion for summary judgment.  *Compare* FED. R. CIV. P. 12(b)-(c) *with*
FED. R. CIV. P. 56(c).  Suffice it to say that the court's previous refusal to dismiss the plaintiff's
claim does not relieve the plaintiff of her obligation to demonstrate the existence of a genuine
issue of material fact with respect to her non-selection claims.

plaintiff's claim because "[l]acking evidence of an available position, plaintiff cannot establish a prima facie case of employment discrimination based on non-promotion").

In fact, this Circuit has expressly noted that a plaintiff may satisfy the fourth element of the prima facie case through evidence that the employer did, in fact, have an available vacant position, notwithstanding the cancellation of a vacancy announcement. *See Carter v. George Wash. Univ.*, 387 F.3d 872, 883 (D.C. Cir. 2004). The district court in *Carter* had determined that no prima facie case of discriminatory non-selection existed because the vacancy announcement had been withdrawn and no individual outside of the plaintiff's protected class was hired to fill the position. *Id.* The Circuit disagreed, observing that the plaintiff had offered evidence that "the position not only remained unfilled, but, as shown by [the employer's] later efforts to bring back the former employee, the [employer] still needed someone to occupy the position." *Id.* This evidence precluded dismissal based on *McDonnell Douglas*'s fourth element. *Id.*

Here, after cancelling the first vacancy announcement on June 9, 2005, the DCRA began advertising the same position less than two months later on August 1, 2005. Def.'s Mot. at 2. Then, after cancelling the second vacancy announcement on September 28, 2005, the DCRA readvertised the position just one week later, on October 3, 2005. *Id.* This series of cancellations, followed by the immediate reposting of the position, hardly indicates the "absence of a vacancy in the job sought." *Cones*, 199 F.3d at 516. Rather, the facts of this case suggest that between June and late October 2005, when the third vacancy announcement was cancelled, the DCRA needed someone to occupy the position of Permanent Electrical Supervisor and

11

continuously solicited candidates to fill the position. Def.'s Mot. at 2-3. The plaintiff applied for the position repeatedly during this period but was not selected. *Id.*

Although the defendant would have this court adopt a categorical rule that the cancellation of a vacancy announcement can never give rise to a discrimination claim, *see* Def.'s Mot. at 6-10; Def.'s Reply at 3-7, this assertion is contrary to existing law, *see Carter*, 387 F.3d at 883; *Terry v. Gallegos*, 926 F. Supp. 679, 709-10 (W.D. Tenn. 1996) (noting that although an employer "may cancel vacancy announcements for a number of reasons, including budget considerations, staffing factors, and training opportunities," the "motivation behind the a vacancy cancellation determines whether the [employer's] action violates Title VII"). The defendant has offered no evidence indicating that external circumstances, such as the need to revise the terms of the vacancy announcement or budgetary constraints, rendered the position advertised in the vacancy announcement unavailable. *Cf. Hopkins v. Whipple*, 2009 WL 1874076, at *4 (D.D.C. June 30, 2009) (holding that the plaintiff failed to make out a prima facie case of discrimination where the agency withdrew the vacancy announcement because it determined that its hiring needs had changed); *Jones v. Tanoue*, 131 F. Supp. 2d 220, 222 (D.D.C. 2001) (determining that the plaintiff failed to demonstrate the existence of an available position where a vacancy announcement was cancelled because it had been erroneously sent to permanent and non-permanent employees and a similar position was subsequently posted open only to permanent employee applicants); *Carter v. Pena*, 14 F. Supp. 2d 1, 6 (D.D.C. 1997) (concluding that the defendant negated any inference of discrimination in connection with its cancellation of vacancy announcements because it was undisputed that the cancellations were necessitated by budgetary

considerations).[5]  Indeed, the defendant offers no explanation whatsoever for the DCRA's

cancellation of the first three vacancy announcements, stating only that "[t]he District simply

chose not to select any of the applicants during the first three selection cycles." Def.'s Reply at

7. The court concludes that because the DCRA continued to seek applicants for the Permanent

Electrical Supervisor position after the plaintiff's applications were rejected, the plaintiff has

satisfied the fourth element of her prima facie case. *See Teneyck*, 365 F.3d 1149-50.

The parties do not dispute that the plaintiff belonged to a protected class, was qualified

for the job and, despite her qualifications, was not selected for the position. *See generally* Defs.'

Mot.; Defs.' Reply; Def.'s Opp'n; Pl.'s Mot.; Pl.'s Reply; Pl.'s Opp'n. Thus, the court concludes

that the plaintiff has satisfied all four elements of a prima facie case of discrimination based on

her non-selections. *See Teneyck*, 365 F.3d at 1149-50. Accordingly, the court denies the

defendant's motion for summary judgment on the plaintiff's non-selection claims.

Because the plaintiff has set forth a prima facie case, the burden shifts to the defendant to

articulate a legitimate, nondiscriminatory reason for the plaintiff's non-selection. *See id*. at 1151.

The plaintiff contends that because the defendant has not articulated such a justification, the

court should grant summary judgment in her favor. Pl.'s Mot. at 6-15.

The Supreme Court has held that

> [e]stablishment of the prima facie case in effect creates a presumption that the
> employer unlawfully discriminated against the employee. If the trier of fact
> believes the plaintiff's evidence, and if the employer is silent in the face of the
> presumption, the court must enter judgment for the plaintiff because no issue of
> fact remains in the case.

*Burdine*, 450 U.S. at 254; *Hicks*, 509 U.S. at 510 n.3 (noting that an employer's "failure to

introduce evidence of a nondiscriminatory reason will cause judgment to go against it *unless* the

---

[5]     The court notes that *Jones* and *Carter* are the principal authorities relied on by the defendant. *See*
Def.'s Mot. at 6-10; Def.'s Reply at 3-7.

plaintiff's prima facie case is held to be inadequate in law or fails to convince the factfinder");

*Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 522 (7th Cir. 1994) (noting that if an employer "does

not meet its burden of going forward with evidence to meet the presumption raised by the prima

facie case, the presumption would, like any other legal presumption, stand unrebutted and entitle

the plaintiff to judgment as a matter of law"); *Cabrera v. Jakabovitz*, 24 F.3d 372, 381 (2d Cir.

1994) (holding that "[i]f the facts of the *prima facie* case are undisputed and the defendant has

produced no evidence to rebut the *prima facie* case . . . the plaintiff is entitled to judgment as a

matter of law"); *DuBerry v. District of Columbia*, 582 F. Supp. 2d 27, 34 (D.D.C. 2008) (stating

that "[i]f the plaintiff makes out a prima facie case of discrimination or retaliation and the

defendant fails to produce evidence which, taken as true, would permit the trier of fact to

conclude that it had a legitimate, non-discriminatory or non-retaliatory reason for the

employment action, then there is no genuine issue of fact remaining for the trier of fact to

determine and the plaintiff is entitled to judgment as a matter of law"); *Carlson v. WPLG/TV-10,

Post-Newsweek Stations of Fl.*, 956 F. Supp. 994, 1004 (S.D. Fla. 1996) (granting the plaintiff's

cross-motion for summary judgment on the grounds that the defendant failed to carry its burden

of articulating a legitimate nondiscriminatory reason for the adverse employment action taken

against the plaintiff).

The defendant in this case has failed, in its motion for summary judgment and in its

opposition to the plaintiff's cross-motion, to articulate any legitimate nondiscriminatory reason

for its failure to hire the plaintiff during the first three non-selections. *See generally* Def.'s Mot.;

Def.'s Reply; Def.'s Opp'n.  Rather, the defendant devotes nearly the entirety of its discussion of

the plaintiff's non-selection claims to its assertion that the plaintiff failed to make out a prima

facie case of discrimination. Def.'s Mot. at 6-10; Def.'s Reply at 3-7; Def.'s Opp'n at 8-14. At

no point does the defendant offer any explanation whatsoever for the plaintiff's non-selection.[6]

Def.'s Mot.; Def.'s Reply; Def.'s Opp'n.

Because the defendant has not offered a single piece of evidence supporting a legitimate

nondiscriminatory justification for the plaintiff's non-selections, the defendant has failed to rebut

the presumption of unlawful discrimination created by the plaintiff's prima facie case. *See*

*Burdine*, 450 U.S. at 254; *Hicks*, 509 U.S. at 510 n.3. Accordingly, the court grants the

plaintiff's motion for summary judgment on these claims.[7]

---

[6]     The only justification for the plaintiff's nonselection that has been presented to the court appears
in the plaintiff's own motion, when she states that she received documentation from the DCRA
informing her that she had not been selected because she failed to meet "minimum
qualifications" for the position. Pl.'s Mot. at 19. The defendant, however, does not assert this
justification in any of its submissions, *see* Def.'s Mot.; Def.'s Reply; Def.'s Opp'n, and indeed,
the plaintiff has presented documentation indicating that she was deemed qualified on the
selection certificates for each of the first three non-selections, *see* Pl.'s Mot., Ex. 6.

[7]     The court is aware that the defendant may have felt that if it had asserted a legitimate,
nondiscriminatory justification, it would have been foreclosed under *Brady* from attacking the
sufficiency of the plaintiff's prima facie case. *See Brady v. Office of the Sergeant at Arms, U.S.
House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (noting that "once the employer
asserts a legitimate, non-discriminatory reason, the question whether the employee actually made
out a prima facie case is 'no longer relevant'" and instructing the district court not to analyze
whether the plaintiff has made out a prima facie case once the employer articulates a legitimate,
non-discriminatory reason for the adverse action) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509
U.S. 502, 510 (1993)). Plainly, *Brady* was not intended to force employers to choose between
asserting a legitimate, nondiscriminatory justification and attacking the sufficiency of the
plaintiff's prima facie case. *See Ginger v. District of Columbia*, 527 F.3d 1340, 1343 (D.C. Cir.
2008) (observing that because the defendant contended that the challenged action was not
materially adverse and proffered a legitimate reason for the action, "[w]e analyze first whether
the [action] was a sufficiently adverse action to support a claim under Title VII [and] then
consider whether the [plaintiffs] have adduced sufficient evidence of . . . discrimination to put
their case before a jury"); *Adesalu v. Copps*, 606 F. Supp. 2d 97, 103 (D.D.C. 2009) (noting that
"[w]hile *Brady* directs the district court's focus to the employer's proffered non-discriminatory
reason, the Court still first must determine whether plaintiff has suffered an adverse employment
action"). Nonetheless, the court will consider such an explanation for its failure to raise a
legitimate, nondiscriminatory justification in any motion for reconsideration.

15

## C. The Court Grants Summary Judgment to the Defendant on the Plaintiff's Retaliation Claims

### 1. Legal Standard for Retaliation

The *McDonnell Douglas* burden-shifting framework also governs claims of unlawful retaliation. *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009 (observing that "[r]etaliation claims based upon circumstantial evidence are governed by the three-step test of *McDonnell Douglas Corp. v. Green*"); *Morgan*, 328 F.3d at 651 (applying the *McDonnell Douglas* framework to a Title VII retaliation claim).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse,[8] and (3) there existed a causal connection between the protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006); *see also Scott v. Kempthorne*, 2006 WL 1980219, at *3 (10th Cir. July 17, 2006). The plaintiff's burden is not great: he "merely needs to establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

If the employer successfully presents a legitimate, non-retaliatory reason for its actions, "the presumption raised by the prima facie is rebutted and drops from the case." *Hicks*, 509 U.S. at 507 (internal citation omitted); *Brady*, 520 F.3d at 494 (noting that "the prima facie case is a largely unnecessary sideshow"). Upon such a showing by the defendant, the district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury

---

[8] In the retaliation context, the term "adverse action" "encompass[es] a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008). Thus, "[r]etaliation claims are 'not limited to discriminatory actions that affect the terms and conditions of employment' and may extend to harms that are not workplace-related or employment-related so long as 'a reasonable employee would have found the challenged action materially adverse.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 68 (2006)).

to find that the employer's asserted non-[retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee on the basis of race, color, religion, sex, or national origin?" *Brady*, 520 F.3d at 494.  In other words, did the plaintiff "show *both* that the reason was false, *and* that . . . [retaliation] was the real reason." *Weber*, 494 F.3d at 186 (alterations in original and internal quotations omitted) (quoting *Hicks*, 509 U.S. at 515).  The court must consider whether the jury could "infer [retaliation] from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were [retaliatory] or that the non-[retaliatory] justification was pretextual." *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (quoting *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005)).  The court should assess the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances of the case. *Aka*, 156 F.3d at 1291.

The strength of the plaintiff's prima facie case, especially the existence of a causal connection, can be a significant factor in his attempt to rebut the defendant's legitimate non-retaliatory reason for the adverse action. *See Aka*, 156 F.3d at 1289 n.4 (stating that "a *prima facie* case that strongly suggests intentional discrimination may be enough by itself to survive summary judgment"); *Laurent v. Bureau of Rehab., Inc.*, 544 F. Supp. 2d 17, 23 n.5 (D.D.C. 2008) (holding that the plaintiff cannot establish pretext because "she is unable to show any causal connection"); *Meadows v. Mukasey*, 2008 WL 2211434, at *5-6 (D.D.C. May 29, 2008) (holding that the plaintiff demonstrated pretext in part by establishing a causal connection).  The plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cones*, 199 F.3d at 521 (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir.

17

1985)); *accord Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that the temporal connection must be "very close": a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and a twenty-month period suggests "no causality at all").

### 2. The Plaintiff's Retaliation Claims

The plaintiff alleges that the defendant retaliated against her for her involvement in protected EEO activity by excluding her from all male staff meetings during her tenure as Acting Electrical Supervisor, sanctioning insubordination among her subordinates, "isolating, degrading, ignoring [and] frustrating her in her efforts to avail herself of her legal rights," interfering with her ability to do her job and preventing her from being appointed to the Permanent Electrical Supervisor position.[9] Am. Compl. ¶¶ 80-88.

The defendant contends that the plaintiff's allegations fail to set forth a prima facie case of retaliation. Def.'s Mot. at 10-16. The defendant asserts that the plaintiff's allegations regarding her exclusion from meetings, sanctioned insubordination and alienation from her coworkers do not constitute adverse employment actions and are not causally connected to her involvement in protected activity. *Id*. at 11-13. Furthermore, the defendant argues that the plaintiff has not shown any causal connection between her non-selections and her involvement in protected activity. *Id*. at 14-15.

The plaintiff does not address the defendant's arguments for summary judgment in her opposition to the defendant's motion. *See generally* Pl.'s Opp'n. In her cross-motion for

---

[9]     The plaintiff appears to allege that these actions both constitute discrete acts of retaliation and give rise to a retaliatory hostile work environment. Am. Compl. ¶¶ 80-88. The plaintiff's retaliation-based hostile work environment claim is addressed separately below.

summary judgment, however, the plaintiff does assert that she is entitled to summary judgment on the retaliation claims predicated on the fourth and fifth non-selections. Pl.'s Mot. at 16-19.

Turning first to the plaintiff's allegations that the defendant excluded her from meetings, sanctioned insubordination, alienated her from her coworkers and interfered with her job performance, the plaintiff's failure to address the defendant's arguments for summary judgment on these claims permits the court to treat the defendant's arguments as conceded. *See Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (holding that "when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded").

Furthermore, the court notes that although the plaintiff does not specify in any of her submissions when these allegedly retaliatory acts occurred, *see generally* Compl.; Am. Compl.; Pl.'s Opp'n; Pl's Mot.; Pl.'s Reply, the submissions suggest that her allegations of insubordination, alienation and interference refer to events that occurred during her tenure as Acting Electrical Supervisor, which ended in late 2005. *See* Pl.'s Mot. at 7-8 (noting that "[t]hroughout her tenure as Acting Electrical Supervisor, [the plaintiff's] subordinates . . . held meetings wherein they spoke of her with hostility and gender bias, and vowed that they would not take orders from her"); Pl.'s Opp'n at 14-15 (noting that while the plaintiff served as Acting Supervisor, "her coworkers consistently resisted her orders" and management ignored her requests for assistance). The plaintiff's first involvement in protected activity did not take place until January 3, 2006, when she filed a discrimination complaint with the DCRA following her third non-selection.[10] Pl.'s Mot. at 17; Def.'s Mot. at 13. The fact that the allegedly retaliatory

---

[10]     The plaintiff suggests that she complained about her mistreatment to her supervisors before filing her administrative claim and that these complaints constituted protected activity. Pl.'s Reply at 20. As an initial matter, the plaintiff improperly raised this argument for the first time in her

actions preceded the protected activity precludes a determination that the protected activity

caused the defendant to retaliate against the plaintiff. *See Marshall v. Potter*, 2009 WL 2023496,

at *5 (D.D.C. July 14, 2009) (holding that the plaintiff did not make out a prima facie case of

retaliation where the only protected activity did not occur until after the adverse action was

taken); *cf. Willingham v. Gonzales*, 391 F. Supp. 2d 52, 61 (D.D.C. 2005) (holding that the

plaintiff's retaliation claim failed for lack of causal connection because she failed to show that

the adverse action followed soon after she engaged in protected activity). Given that the plaintiff

has offered no other evidence of a causal connection, the court grants summary judgment to the

defendant on these retaliation claims. *See id.*

Turning to the retaliation claims premised on the plaintiff's non-selections, the first three

non-selections preceded the filing of her administrative complaint with the DCRA. *See* Pl.'s

Mot. at 17. Plainly, these non-selections are not causally connected to her involvement in

protected activity and cannot support a retaliation claim. *See Marshall*, 2009 WL 2023496, at

*5. Accordingly, the court grants summary judgment to the defendant on these claims as well.

The retaliation claims premised on the fourth and fifth non-selections, however, deserve

closer scrutiny. Although the plaintiff presents no direct evidence of causal connection, she

points out that these non-selections occurred on May 1, 2006 and May 26, 2006, approximately

two months after she filed a discrimination complaint with the EEOC in March 2006. Pl.'s Mot.

---

reply. *See Karst Envtl. Educ. & Prot., Inc. v. Envtl. Prot. Agency*, 475 F.3d 1291, 1299 (D.C. Cir. 2007) (refusing to consider arguments vaguely alluded to in the opening brief and not fully raised until the reply brief). Moreover, the Circuit has noted that "[w]hile no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition" to qualify as protected activity. *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (holding that the plaintiff's written complaint to her supervisors did not constitute a protected activity because she complained of her treatment but did not allege that she was suffering discrimination or retaliation). Here, the plaintiff alleges only that she complained of "mistreatment" and does not suggest that her complaint contained any allegations of discrimination or retaliation. *See* Pl.'s Reply at 20. Accordingly, these complaints of mistreatment, whenever they occurred, do not qualify as protected activity.

at 18-19. This interval represents the outer bounds at which courts have been willing to infer

causal connection based merely on temporal proximity. *See Holmes-Martin v. Leavitt*, 569 F.

Supp. 2d 184, 204 (D.D.C. 2008) (observing that "[t]his district has varied as to whether two

months is sufficient to establish a causal connection"); *compare Taylor v. Solis*, 571 F.3d 1313,

1322 (D.C. Cir. 2009) (holding that "an inference of retaliatory motive based upon the 'mere

proximity' in time between [the plaintiff's] filing her first suit and the [adverse action] two and

one-half months later would be untenable on the record here") (collecting cases) *and Edwards v.*

*Envtl. Prot. Agency*, 456 F. Supp. 2d 72, 92 (D.D.C. 2006) (concluding that a two-month gap is

not sufficient to establish temporal proximity) *with Sewell v. Chao*, 532 F. Supp. 2d 126, 139

(D.D.C. 2008) (holding that a two-month period "might be enough . . . to prove the causation

prong").

Here, any inference of a retaliatory motive is substantially undermined by the fact that the

DCRA declined to hire the plaintiff for the Permanent Electrical Supervisor position on three

separate occasions before the plaintiff engaged in any protected activity. *See* Pl.'s Mot. at 17.

Under these circumstances, the court concludes that the interval between the filing of the

plaintiff's EEO complaint and the fourth and fifth non-selections is insufficient to support an

inference of causal connection. Accordingly, the court grants summary judgment to the

defendant on these retaliation claims.

### C. The Court Grants Summary Judgment to the Defendant on the Plaintiff's Hostile Work Environment and Constructive Discharge Claims

#### 1. Legal Standard for Claim of Hostile Work Environment

Title VII prohibits an employer from discriminating against any individual with respect to

compensation, terms, conditions, or privileges of employment because of race, color, religion,

sex, or national origin. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Toward that end, an

employer may not create or condone a hostile or abusive work environment that is

discriminatory. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). Such an

environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation,

ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment.'" *Singletary v. District of Columbia*,

351 F.3d 519, 526 (D.C. Cir 2003) (quoting *Meritor*, 477 U.S. at 65, 67). On the other hand,

"[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work

environment – an environment that a reasonable person would find hostile or abusive – is beyond

Title VII's purview." *Harris*, 510 U.S. at 21. Thus, to determine whether a hostile work

environment exists, the court looks to the totality of the circumstances, including the frequency

of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an

employee's work performance. *Id.* at 23; *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88

(1998). In considering the totality of the circumstances, however, the court is mindful that

> [e]veryone can be characterized by sex, race, ethnicity or (real or perceived) disability; and many bosses are harsh, unjust and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

*Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) (quoting *Alfano v. Costello*, 294 F.3d

365, 377 (2d Cir. 2002)).

A plaintiff may also demonstrate that she was subjected to a hostile work environment in

retaliation for her involvement in protected activity. *See Hussain v. Nicholson*, 435 F.3d 359,

366 (D.C. Cir. 2006). To succeed on such a claim, the plaintiff must show that she was

22

subjected to "'discriminatory intimidation, ridicule and insult' of such 'sever[ity] or

pervasive[ness] [as] to alter the conditions of . . . employment and create an abusive working

environment.'" *Id.*, 435 F.3d at 366. Furthermore, the plaintiff must establish a causal

connection between the harassment and her protected activity to succeed on the claim. *See*

*Nichols v. Truscott*, 424 F. Supp. 2d 124, 141 (D.D.C. 2006).

### 2. Legal Standard for Constructive Discharge

An actionable constructive discharge claim requires a showing that (1) intentional

discrimination existed, (2) the employer deliberately made working conditions intolerable, and

(3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her

employment. *Carter v. George Washington Univ.*, 180 F. Supp. 2d 97, 110 (D.D.C. 2001)

(citing *Clark v. Marsh*, 665 F.2d 1168, 1173-74 (D.C. Cir. 1981)); *See Mungin v. Katten Muchin*

*& Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997) (holding that a plaintiff alleging constructive

discharge must show that the "employer deliberately made working conditions intolerable and

drove the employee out" of the position). As the Fourth Circuit has stated,

> [e]very job has its frustrations, challenges and disappointments; these inhere in the
> nature of work. An employee is protected from a calculated effort to pressure him
> into resignation through the imposition of unreasonably harsh conditions, in
> excess of those faced by his co-workers. He is not, however, guaranteed a
> working environment free of stress. The employment discrimination laws require
> as an absolute precondition to suit that some adverse employment action have
> occurred. They cannot be transformed into a palliative for every workplace
> grievance, real or imagined, by the simple expedient of quitting.

*Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985).

### 3. The Plaintiff's Hostile Work Environment and Constructive Discharge Claims

The plaintiff contends that the DCRA subjected her to a hostile work environment and

constructively discharged through the following actions: declining to select her for the

Permanent Electrical Supervisor position; ignoring her complaints regarding insubordination by her subordinates; permitting her coworkers to make negative comments about her; removing her from the position of Acting Supervisor; failing to compensate her for serving as Acting Supervisor and failing to respond to her inquiries regarding her lack of compensation and the reason for her non-selection for the permanent position. *See* Pl.'s Mot. at 19-22; Pl.'s Reply at 16-18. The plaintiff contends that these allegations are substantial and unrefuted and that, accordingly, she is entitled to summary judgment on her claims. Pl.'s Mot. at 22.

The defendant asserts that the plaintiff's hostile work environment and constructive discharge claims merely repackage her allegations of discrete acts of discrimination and retaliation. Def.'s Mot. at 17. In addition, the defendant maintains that the conduct about which the plaintiff complains is not sufficiently severe or pervasive to support her claims. *Id.* at 17-18. Lastly, the defendant argues that the plaintiff has failed to demonstrate that DCRA management knew or should have known of any discrimination suffered by the plaintiff. *Id.* at 18. Thus, the defendant argues that summary judgment should be granted in its favor.

Even viewing the plaintiff's allegations in the light most favorable to her, there is simply no evidence that the mistreatment that she suffered was sufficiently severe or pervasive to create an abusive working environment. *See Singletary*, 351 F.3d at 526. The plaintiff has offered no evidence that any of the incidents of insubordination and hostility she complains of were accompanied by physical threats, abusive or offensive language or any other characteristics of "extreme conduct." *See Lester v. Natsios*, 290 F. Supp. 2d 11, 31 (D.D.C. 2003) (noting that the plaintiff's allegations must reflect "extreme conduct . . . to transform 'the ordinary tribulations of the workplace' into a legally cognizable hostile work environment claim") (citing *Faragher*, 524

24

U.S. at 787-88). Nor is there any evidence regarding the frequency of these hostile incidents. *See generally* Am. Compl.; Pl.'s Opp'n; Pl.'s Mot.; Pl.'s Reply. In short, the plaintiff's allegations of insubordination by her subordinates, negative comments by her coworkers, non-selection for a promotion and the unresponsiveness of her supervisors fall squarely within the category of "ordinary tribulations of the workplace" that are not actionable under a hostile work environment theory. *See Faragher*, 524 U.S. at 787-88 (noting that Title VII is not intended as "general civility code"); *Breeden*, 532 U.S. at 271 (observing that "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are insufficient to sustain a hostile work environment claim). Accordingly, the court grants summary judgment to the defendant on this claim.

The absence of any of evidence of extreme mistreatment is likewise fatal to the plaintiff's constructive discharge claim. *See Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 18 (D.D.C. 2008) (granting summary judgment to the employer because the plaintiff's allegations "taken individual or together . . . simply do not rise to the extreme mistreatment that is necessary to support a finding of a constructive discharge"); *Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55, 78 (D.D.C. 2006) (noting that "[t]he kinds of situations where courts have upheld constructive-discharge findings tend to involve extreme mistreatment or thinly veiled (or even overt) threats of termination") (emphasis added); *see also Clark*, 665 F.2d at 1173 (holding that in order succeed on a claim for constructive discharge, a plaintiff must demonstrate the existence of working conditions so intolerable that a reasonable employee would have found remaining in the job unbearable). Because no reasonable jury could conclude that the defendant's conduct

satisfied this standard, the court grants the defendant's motion for summary judgment on the plaintiff's constructive discharge claim.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's motion for summary judgment, and grants in part and denies in part the plaintiff's cross-motion for summary judgment.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 14th day of September, 2009.

RICARDO M. URBINA
United States District Judge
