UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| TANYA LEWIS, | : | | |
| Plaintiff, | : | Civil Action No.: | 07-0429 (RMU) |
| v. | : | Re Document No.: | 83 |
| DISTRICT OF COLUMBIA, | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

**DENYING THE DEFENDANT'S MOTION FOR RELIEF UPON RECONSIDERATION; GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This matter is before the court on the defendant's second motion for relief upon reconsideration of a September 14, 2009 ruling, in which the court granted partial summary judgment to the plaintiff on her discrimination claims, and the defendant's motion for summary judgment in response to the plaintiff's second amended complaint. For the reasons discussed below, the court denies the defendant's second motion for reconsideration and grants in part and denies in part the defendant's motion for summary judgment.[1]

## II. ANALYSIS

### A. The Court Denies the Defendant's Motion for Relief Upon Reconsideration

The defendant has filed a second motion for relief upon reconsideration of the court's September 14, 2009 ruling, in which the court granted summary judgment to the plaintiff on the issue of the defendant's liability for gender discrimination. Def.'s Mot. for Summ. J. Regarding

---

[1] A complete summary of the facts and procedural history of the case can be found in prior opinions. *See* Mem. Op. (Sept. 8, 2010) at 2-4; Mem. Op. (Sept. 14, 2009) at 2-5; Mem. Op. (Jan. 24, 2008) at 2-4.

Pl.'s 2d Am. Compl. & Mot. for Relief Upon Reconsideration ("Def.'s Mot.") at 14-16.[2] In its motion, the defendant argues, yet again, that the plaintiff failed to establish a prima facie case of gender discrimination because she failed to show that she was treated differently from a similarly situated male applicant. *Id.* The plaintiff responds that the defendant has advanced no new arguments or authority justifying such relief.[3] *See* Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") at 21-24.

In denying the defendant's first motion for relief upon reconsideration, in which the defendant raised the same arguments asserted in the motion for reconsideration now before the court, the court explained that "[t]his Circuit has squarely and repeatedly rejected the notion that a plaintiff must show that she was treated differently from a similarly situated individual outside her protected class to establish a prima facie case of discrimination." Mem. Op. (Sept. 8, 2010) at 6-7 (citing *Ginger v. District of Columbia*, 527 F.3d 1340, 1344 (D.C. Cir. 2008); *Czekalski v. Peters*, 475 F.3d 360, 365-66 (D.C. Cir. 2007); *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 851 (D.C. Cir. 2006); *George v. Leavitt*, 407 F.3d 405, 412-13 (D.C. Cir. 2005); *Stella v. Mineta*, 284 F.3d 135-146 (D.C. Cir. 2002)). The court further noted that *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139 (D.C. Cir. 2004), the principal authority on which the defendant relied in its earlier motion, and which the defendant cites again in its second motion for relief

---

[2] The defendant's motion lacks page numbers. *See generally* Def.'s Mot. For convenience, the court will refer to the pagination provided by the court's electronic filing system.

[3] The plaintiff also argues that reconsideration of the court's September 2009 ruling is barred by issue preclusion. *See* Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") at 9. This doctrine, however, only prevents the reconsideration of issues decided in prior proceedings. *See Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979) ("[C]ollateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." (citing *Montana v. United States*, 440 U.S. 147, 153 (1979))). The plaintiff's invocation of the law of the case doctrine, Pl.'s Opp'n at 8-9, is equally baseless, as an order granting summary judgment on the sole issue of liability, such as the order at issue here, is considered to be interlocutory, *Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985), and review of interlocutory orders is not bound by the law of the case doctrine, *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009) (quoting *Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997)).

upon reconsideration, "expressly rejected the position offered by the defendant." Mem. Op. (Sept. 8, 2010) at 7; *see also Teneyck*, 365 F.3d at 1150 ("[I]n order to make out a prima facie case, it is not necessary for an African-American to show that she was disadvantaged by the employer's hiring of a Caucasian applicant, *or for a female plaintiff to show that a male was hired in her stead*.") (emphasis added).

The defendant's inexplicable invocation of the same baseless arguments, even in the face of overwhelming binding authority contrary to its position, has consumed more than its share of the court's time. *See* Def.'s Mot. at 14-16. The defendant's second motion for relief upon reconsideration is denied.[4]

### B. The Court Grants in Part and Denies in Part the Defendant's Motion for Summary Judgment

#### 1. Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[4] In its reply brief, the defendant argues for the first time that even if the plaintiff had established a prima facie case of discrimination, the court should still grant summary judgment to the defendant "because Plaintiff has not presented sufficient evidence of pretext." Def.'s Reply at 3. As a threshold matter, "it is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief," *Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)), much less an argument, like this one, raised for the first time in a reply brief in support of a second motion for reconsideration, *see Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993) (noting that a motion for reconsideration is not a vehicle for advancing theories or arguments that could have been advanced earlier). Furthermore, although a plaintiff must prove that a defendant's legitimate, non-discriminatory justification is pretext for discrimination, the court granted summary judgment to the plaintiff in this case precisely because the defendant declined to offer a legitimate, non-discriminatory justification at the summary judgment stage, choosing instead to focus exclusively on the sufficiency of the plaintiff's prima facie case. *See generally* Mem. Op. (Sept. 14, 2009); Mem. Op. (Sept. 8, 2010). Finally, although the defendant suggests – again, for the first time – that the serial reposting of the supervisory position "demonstrates a level of . . . managerial indecision which, in and of itself, constitutes the legitimate, non-discriminatory justification for Plaintiff's non-selection," Def.'s Reply at 3, this belated suggestion is completely unsupported, and provides no justification for revisiting the court's earlier rulings on this matter, *see Kempthorne*, 537 F. Supp. 2d at 12 n.5 (citing *Herbert*, 974 F.2d at 196).

law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

## 2. The Court Concludes that the Statutory Cap Limits the Plaintiff's Total Recovery of Compensatory Damages to $300,000 and that the Equitable Relief Available in this Case Is Limited to the Potential Recovery of Back Pay for the Period Preceding the Plaintiff's Resignation

On January 25, 2011, the court granted the plaintiff leave to file a second amended complaint, which contained no new substantive allegations but clarified the nature of the relief sought by the plaintiff. *See* Minute Entry (Jan. 25, 2011); *compare* 1st Am. Compl. at 19-20 (requesting $300,000 in general damages per count, in addition to punitive damages) *with* 2d Am. Compl. at 19-22 (requesting $300,000 in compensatory damages per count, with the exception of counts seven and ten, as well as back pay, front pay, reinstatement and other remedies). The defendant now moves for summary judgment on multiple issues relating to the relief sought in the second amended complaint. *See generally* Def.'s Mot. Specifically, the defendant argues that recovery of compensatory damages in this case is limited by statute to a total sum of $300,000, that the plaintiff cannot recover back pay because she subsequently obtained positions with higher salaries than what she would have earned had she been selected as Electrical Inspector and that she is not entitled to back pay, reinstatement or front pay as a matter of law because she "voluntarily resigned" from her position at DCRA. *Id.* at 8-14.

The plaintiff concedes that the statutory damages cap limits recovery of compensatory damages to $300,000.[5] Pl.'s Opp'n at 10. As for the defendant's arguments regarding back pay, front pay and reinstatement, the plaintiff argues that the defendant's motion is procedurally improper, as the court only granted the defendant leave to file a motion addressing the narrow issue of whether the statutory damages cap applied to each claimant or to each claim. *Id.* at 3-4.

---

[5] The court concurs with the position taken by the parties. The language of the statute is unequivocal: "[T]he amount of compensatory damages awarded . . . shall not exceed, for each complaining party – (D) . . . $300,000." *See* 42 U.S.C. § 1981a(b)(3)(D); *see also Fogg v. Ashcroft*, 254 F.3d 103, 107-08 (D.C. Cir. 2005) (holding that the statutory cap applies to each lawsuit, rather than each claim).

Furthermore, the plaintiff responds that the defendant's calculation of damages is fundamentally flawed, precluding summary judgment, and disputes the defendant's assertion that the plaintiff "voluntarily resigned" from her position. *Id.* at 10-21.

The court first considers the plaintiff's procedural objections. Federal Rule of Civil Procedure 56(b) provides that "[u]nless . . . the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." FED. R. CIV. P. 56(b). In this case, the court ordered that all dispositive motions be submitted by February 16, 2009. *See* Min. Order (Dec. 10, 2008). The defendant did not seek summary judgment on the plaintiff's requests for relief by that deadline.

The court, however, has "broad discretion in controlling its own docket." *Edwards v. Cass Cnty., Tex.*, 919 F.2d 273, 275 (5th Cir. 1990); *accord Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 (D.C. Cir. 2005) (citing *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996)) (reviewing the lower court's case management decision, involving a summary judgment motion filed after the dispositive-motions deadline, for abuse of discretion). Under certain circumstances, the court may exercise that discretion and consider dispositive motions otherwise barred by procedural rules. *See In re Sch. Asbestos Litig.*, 977 F.2d 764, 795 (3d Cir. 1992) (noting that dispositive-motion deadlines are intended to further judicial economy and fairness). Specifically, the court may consider whether the non-moving party would be prejudiced, *see Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (finding no prejudice absent an indication that the motion would have been decided differently before the deadline), whether the substantive claims have merit, *see Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 58 (1st Cir. 2000) (approving the lower court's decision to review a tardy motion for summary judgment, in part because the issues raised were "relatively

straightforward"), and whether the moving party could have raised the issue before the dispositive-motions deadline, *see Ward v. Moore*, 414 F.3d 968, 969 (5th Cir. 2005) (noting that the district court considered a post-deadline summary judgment motion because the motion asserted a defense in response to post-deadline amendments to the complaint, which the moving party could not have previously raised).

In this case, the plaintiff was permitted to amend the complaint well after the dispositive motions deadline had passed. *See* Minute Entry (Jan. 25, 2011). Through these amendments, the plaintiff specified that she sought back pay, front pay and reinstatement, in addition to other damages. *See* 2d Am. Compl. at 19-22. The defendant's motion for summary judgment, though filed without leave of the court, specifically addresses the new forms of relief sought in the second amended complaint. *See generally* Def.'s Mot. The defendant could not have addressed those specific remedies at an earlier date, as the plaintiff had yet to formally request them. *See generally* 1st Am. Compl. Furthermore, the issues raised in the motion for summary judgment generally concern matters of law that are easily resolved by the court. *See* Def.'s Mot. at 8-14. Finally, the plaintiff has presented nothing to suggest that she would be prejudiced should the court consider the defendant's arguments. *See generally* Pl.'s Opp'n. To the contrary, the defendant would be prejudiced were the court to allow the plaintiff to amend her complaint and then refuse to permit the defendant an opportunity to seek summary judgment on the novel issues raised for the first time therein. Thus, judicial efficiency and fairness require the court to review the motion, despite its unannounced submission after the summary judgment deadline.

Turning to the defendant's first substantive argument – that the defendant's subsequent employment at a higher salary precludes monetary relief – the court notes that Title VII authorizes the award of back pay for economic losses resulting from unlawful discrimination. 42

U.S.C. § 2000e-5(g)(1). Indeed, "[v]ictorious Title VII plaintiffs are presumptively entitled to back pay until the date judgment has been entered in the case." *Equal Emp't Opportunity Comm'n v. Wilson Metal Casket Co.*, 24 F.3d 836, 840-41 (6th Cir. 1994) (quoting *Shore v. Fed. Express Corp.*, 777 F.2d 1155, 1159 (6th Cir. 1985)).

An award of back pay is calculated "by measuring the difference between the plaintiff's actual earnings for the period and those which he would have earned absent the discrimination of defendants." *Waters v. Wisc. Steel Works of Int'l Harvester Co.*, 502 F.2d 1309, 1321 (7th Cir. 1974). The award of back may also include regular and anticipated pay increases, even if they are performance-based, *id.*, as well as lost fringe benefits, such as contributions to a company savings plan, sick leave pay, compensation for medical expenses and life insurance, *see, e.g.*, *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994) (citing 42 U.S.C. § 2000e-5(g)).

A plaintiff, however, is not entitled to back pay if he or she subsequently finds employment that is "better [than] or substantially equivalent" to the position she was denied. *Donlin v. Philips Lighting N.A. Corp.*, 581 F.3d 73, 84 (3d Cir. 2009) (citing *Ford Motor Co. v. Equal Emp't Opportunity Comm'n*, 458 U.S. 219, 236 (1982)). "Substantially equivalent" employment is that which affords "virtually identical promotional opportunities, compensation, job responsibilities, and status as the position from which the Title VII claimant has been discriminatorily terminated." *Id.* (citing *Booker v. Taylor Milk Co.*, 64 F.3d 860, 866 (3d Cir. 1995)).

In light of these principles, the plaintiff in this case is entitled to an award of back pay equal to the difference, if any, between what she would have earned had she received the promotion and what she did earn over the same period, as well as any anticipated pay increases

8

and lost fringe benefits, provided she did not receive "substantially equivalent" employment. *See id*; *Metz*, 39 F.3d at 1493 (citing 42 U.S.C. § 2000e-5(g)). Although the defendant contends that the plaintiff's earnings following her departure from the DCRA exceeded the maximum annual salary of the supervisory position sought, *see* Def.'s Mot. at 10-11, it has not specifically addressed the value of any lost fringe benefits, promotional opportunities or responsibilities the plaintiff had over the same period, *see generally id.*, other than an unsupported assertion that the plaintiff's new employers and the plaintiff's previous employer provide similar benefits, *see id.* at 12-13. Accordingly, the defendant has not conclusively demonstrated that the plaintiff is not entitled to any award of back pay based on the positions she obtained after resigning.

Yet despite the fact that the plaintiff is not categorically precluded from seeking any back pay, it is not the case that the plaintiff is entitled to seek back pay for the entire period between her non-selection and the entry of final judgment. Although a successful plaintiff is eligible to recover back pay for the period beginning on the date of the discriminatory act through the entry of final judgment, *see Fogg v. Gonzalez*, 492 F.3d 447, 454 (D.C. Cir. 2007), a plaintiff who resigns or retires from his or her position is barred from recovering back pay for the period after his or her departure, absent a viable claim of constructive discharge, *Clark v. Marsh*, 665 F.2d 1168, 1173 (D.C. Cir. 1981) (requiring a finding of constructive discharge to justify post-departure back pay); *Brown v. District of Columbia*, 2011 WL 810245, at *7 (D.D.C. Mar. 3, 2011) (citing *Marsh*, 665 F.2d at 1175-76) (noting that resignation precludes subsequent back pay, unless the plaintiff offers proof of constructive discharge); *Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55, 74 (D.D.C. 2006) (stating that a jury finding of constructive discharge, rather than voluntary resignation, would entitle the plaintiff "to collect lost pay and retirement benefits under Title VII beyond the point at which her employment ended; on the other hand, if a jury were to

9

reach the opposite conclusion, plaintiff's eligibility for back pay and benefits under Title VII would be cut off as of the date of her resignation" (citing *Jurgens v. Equal Emp't Opportunity Comm'n*, 903 F.2d 386, 389 (5th Cir. 1990))); *Donnell v. England*, 2005 WL 641749, at *1 (D.D.C. Mar. 17, 2005) (awarding back pay only through the date that the plaintiff resigned, based on the plaintiff's failure to establish constructive discharge). This court has already granted summary judgment to the defendant on the plaintiff's constructive discharge claim, concluding that the plaintiff failed to offer sufficient evidence to give rise to a genuine dispute on that claim. *See* Mem. Op. (Sept. 14, 2009) at 23-25. In the absence of a viable constructive discharge claim, the plaintiff is barred from recovering back pay for the period following her resignation from the DCRA and the court grants summary judgment to the defendant on this aspect of the plaintiff's request for relief.

The absence of a viable claim of actual or constructive discharge also completely precludes an award of reinstatement, *see Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 767 (D.C. Cir. 1997) (observing that "wrongful discharge (either actual or constructive) is a necessary element of a claim for reinstatement – discrimination and voluntary resignation are not enough"), and recovery of front pay, *see Hertzberg v. SRAM Corp.*, 261 F.3d 651, 659 (7th Cir. 2001) (stating that no entitlement to equitable relief, whether back pay, front pay or reinstatement, exists if the plaintiff departed from the position in question and is unable to establish either actual or constructive discharge); *Donnell*, 2005 WL 641749, at *1 (denying the plaintiff's requests for front pay and reinstatement based on a failure to assert constructive discharge). Thus, based on this court's previous ruling rejecting the plaintiff's constructive discharge claim, *see* Mem. Op. (Sept. 14, 2009) at 23-25, the plaintiff is foreclosed from

10

obtaining reinstatement or front pay as a matter of law and the court grants summary judgment to the defendant on these requests for relief as well.[6]

## IV. CONCLUSION

For the foregoing reasons, the court denies the defendant's motion for relief upon reconsideration of a prior interlocutory order, and grants in part and denies in part the defendant's motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 14th day of June, 2011.

RICARDO M. URBINA  
United States District Judge

---

[6] As a result, the only equitable relief to which the plaintiff is potentially entitled is an award of back pay for the period between her non-selection and her resignation.